A08A1439. BURTON v. THE STATE.
(668 SE2d 306)

MILLER, Judge.

On November 13, 2003, a Columbia County jury found Keisha Burton guilty of armed robbery, burglary, kidnapping, and possession of a firearm during the commission of a crime (in violation of OCGA §§ 16-8-41, 16-7-1, 16-5-40, and 16-11-106, respectively). Burton now appeals from the trial court's denial of her motion for a

YALE LAW LIBRARY

new trial, claiming that the trial court erred in (i) denying her motion for directed verdict when the only evidence against her was the uncorroborated testimony of a co-defendant and (ii) admitting into evidence a letter Burton wrote to a co-defendant, thereby improperly putting Burton's character in issue. Discerning no error, we affirm.

"The standard of review for the denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. [Cit.]" *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007). Under that standard,

> [w]e view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation omitted.) *Lee v. State*, 281 Ga. App. 479, 479-480 (1) (636 SE2d 547) (2006).

So viewed, the record shows that on January 1, 2002, after celebrating New Year's Eve at several local bars and restaurants, three friends, Bill Anderson, Tony Baughman, and Victor Boyd, returned to Boyd's home in Martinez where Anderson and Baughman decided to call an escort service. At approximately 1:00 a.m., Anderson placed a call to a service listed in the phone book as "AA Angels." Baughman was in possession of $15,000 that night that he recently collected in a lawsuit. Baughman had paid the way for his friends all evening and intended to pay for the escorts. While his friends were waiting for the escorts to arrive, Boyd went to bed.

Burton's co-defendants, Charlene Thatcher and Kim Rodgers, responded to Anderson's call. Thatcher and Rodgers worked for co-defendant Steven Barnes, who, with Burton's assistance, was running a prostitution ring.[1] Thatcher and Rodgers lived in the same house with Barnes and Burton. When Thatcher and Rodgers went on calls, they were accompanied either by Barnes or Burton, who would wait outside to collect the money.

Burton rode with Thatcher and Rodgers to Boyd's residence, and Burton waited outside in the car while the women went inside to collect payment. Baughman paid Thatcher and Rodgers $400, and when he did so, the women saw his large stack of cash. Thatcher took

---

[1] Keisha Burton is also known as Patricia Rouse.

YALE LAW LIBRARY

the $400 outside to Burton and told Burton to call Barnes "to tell him that we came across a lot of money and to come down because we're going to pull a lick," i.e., rob the customer. Thatcher stated that she and Burton both spoke with Barnes and that Barnes told Thatcher that he would be there in a little while.

While Thatcher was outside, Baughman went to the back bedroom and gave his money to Boyd. Baughman discovered an additional $350 in his back pocket, and he placed that money under a couch cushion.

Thatcher and Rodgers then engaged in sexual intercourse with Baughman and Anderson. A dispute arose between Rodgers and Anderson, however, because Rodgers claimed that Anderson committed a "foul" and owed her an additional $500. When Anderson refused to pay, Rodgers and Thatcher called Barnes. According to Thatcher, Barnes told her "to tell them it's all right, because he was going to rob them anyway."

Shortly thereafter, Barnes rang the doorbell. After entering the house, Barnes pulled a ski mask over his face, drew a gun, and demanded to know, "Where's the cheese?" Barnes forced Anderson to move closer to Baughman, who was sitting on the couch, and continued to threaten the men and demand money. Baughman gave Barnes the $350 that was hidden in the couch. Barnes then demanded that Thatcher and Rodgers search the house. Thatcher and Rodgers began searching the bedrooms and tried to enter the room where Boyd was sleeping, but the door was locked. As they attempted to kick in the door, and as Barnes threatened to shoot the door open, Boyd switched on the light and dialed 911. Barnes, Thatcher, and Rodgers fled the house. Barnes left the scene in the same car he arrived in, a Ford Bronco, and Barnes and Thatcher drove away separately with Burton. The police arrived moments later but did not give chase.

On January 12, 2002, Barnes was arrested while dropping women off at a local hotel. The officers searched Barnes' car incident to his arrest and recovered a black handgun, identified at trial by several witnesses as the gun Barnes used during the robbery at Boyd's house.

On January 17, 2002, the Richmond County Sheriff's Office executed a search warrant at Barnes' residence. Officers found a document containing instructions for prostitutes. The officers also searched a Ford Bronco on the premises and found a black ski mask identified at trial by witnesses as the one worn by Barnes when he arrived at Boyd's house.

Burton, Barnes, Thatcher and Rodgers were subsequently indicted on counts of armed robbery, burglary, kidnapping, and posses-

sion of a firearm during the commission of a crime.[2] Thatcher and Rodgers each entered into a plea agreement prior to trial and testified against Burton and Barnes, who were tried together.[3]

1. In her first enumeration of error, Burton claims that the trial court erred in denying her motion for directed verdict because the only evidence supporting her conviction was the uncorroborated testimony of her co-defendant, Charlene Thatcher. We disagree.

It is well settled under Georgia law that "the testimony of an accomplice, standing alone, is insufficient to convict an accused." *Williamson v. State*, 285 Ga. App. 779, 781 (1) (648 SE2d 118) (2007); OCGA § 24-4-8. "[T]here must be independent corroborating evidence, either testimony from another witness or corroborating circumstances, which connects the accused to the crime." (Footnote omitted.) *Reynolds v. State*, 267 Ga. App. 148, 151 (3) (598 SE2d 868) (2004). However, "the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged." (Citation and punctuation omitted.) *Givens v. State*, 227 Ga. App. 861, 862 (490 SE2d 530) (1997). Rather, "[s]light evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." (Citation and punctuation omitted.) Id.; see also *Mitchell v. State*, 279 Ga. 158, 159 (1) (611 SE2d 15) (2005) ("Slight evidence identifying appellant as a participant in the criminal act was sufficient corroboration [to sustain the conviction]."). "[T]he sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine." (Citation omitted.) *Harrison v. State*, 259 Ga. 486, 488 (1) (384 SE2d 643) (1989). Thatcher's testimony, which implicated Burton as a party to the crimes at Boyd's residence (see OCGA § 16-2-20), was sufficiently corroborated by the testimony and evidence presented at trial.

It is well settled that the "testimony of one accomplice may be used to corroborate that of another." (Citation and punctuation omitted.) *Navarrete v. State*, 283 Ga. 156, 160 (2) (656 SE2d 814) (2008); accord *Carr v. State*, 289 Ga. App. 875, 877 (2) (658 SE2d 419) (2008). For an accomplice's corroborating testimony to authorize a conviction, it need not "corroborate the testimony of [the other] accomplice as to all the material facts of the case. It is sufficient if it connect[s] the accused with the commission of the crime, and tends

---

[2] Barnes also was indicted on three counts of terroristic threats, two counts of pandering, and one count of possession of a firearm by a convicted felon. Thatcher and Rodgers also were indicted on counts of prostitution.

[3] The jury found Barnes guilty of robbery, burglary, kidnapping, terroristic threats, pandering, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.

YALE LAW LIBRARY

to show [her] guilt." (Citations and punctuation omitted.) *Slocumb v. State*, 164 Ga. App. 114 (296 SE2d 409) (1982). Here, the testimony of Thatcher's co-defendant, Marsha Rodgers, provided sufficient corroborating evidence. Both women testified that they lived with and worked for Barnes, who was running a prostitution ring with Burton's assistance. Both also testified that Burton accompanied them on the call to Boyd's house. Burton claims, however, that Rodgers testified that she and Thatcher "never told [Burton] about the money and they never called Barnes to inform him of the money." This contention is belied by the record. Rodgers never denied that Thatcher told Burton about the money or that Thatcher and Burton called Barnes to tell him about it. Rodgers stated that she did not go with Thatcher when Thatcher took Baughman's money outside to Burton, but she stated that she watched Thatcher from a screen door in the house and could see her talking on the phone. Thus, Rodgers' testimony was consistent with, not contradictory to, Thatcher's.

Thatcher's testimony was further corroborated by other witnesses and evidence presented at trial. Thatcher's account was corroborated by testimony that Barnes instructed Thatcher and Rodgers to search the house after Baughman gave him $350. This testimony would allow a jury to infer that Barnes knew that there was more money in the house. The circumstances surrounding Barnes' arrest and the evidence gathered during the search of his residence, such as a list of instructions for prostitutes, also confirmed Thatcher's and Rodgers's testimony that Barnes was running a prostitution business. The recovery of a black handgun from Barnes' vehicle on the day of his arrest, the fact that a Ford Bronco was found at Barnes' residence, and the recovery of a black ski mask from the Bronco corroborates the testimony of Thatcher and other witnesses that Barnes drove a Ford Bronco and that he wore a black ski mask and wielded a black handgun when he arrived. Finally, the prosecution introduced into evidence a portion of a letter Burton wrote to the Columbia County District Attorney's office in which she purported to admit that she owned and ran the AA Angels escort service. This letter provided further evidence of Burton's connection with Barnes and his prostitution business, the business Anderson and Baughman contacted on January 1, 2002.

In light of the foregoing, we conclude that the evidence at trial sufficiently corroborated Thatcher's testimony and supported the jury's verdict.

2. In her second enumeration of error, Burton contends that the trial court erred in admitting a letter she wrote to Barnes while she was incarcerated awaiting trial. Burton contends that the letter constituted evidence of her alleged bad character and was inadmis-

sible under OCGA § 24-9-20. As her brief concedes, however, Burton did not raise this objection in the trial court. Instead, her counsel objected to the letter's admission on grounds of relevance and because it allegedly was not provided in discovery. "The specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Footnote omitted.) *McDaniel v. State*, 289 Ga. App. 722, 725 (3) (658 SE2d 248) (2008). Burton waived her objection that the letter constituted improper character evidence, and therefore we cannot consider her second enumeration of error.

Even if the grounds for this claim of error had been preserved below, Burton could not prevail on this claim. The prosecutor advised the trial judge that he did not intend to allow the jury to hear the entire contents of the letter, nor did he want the letter to go out with the jury because he believed that would violate the "continuing witness rule." The prosecutor asked Thatcher to identify Burton's handwriting in the letter and stated that he planned to read portions of the letter during closing argument. Closing arguments, however, were not transcribed, and, therefore, the record does not show which portions of Burton's letter were read to the jury. "It is the defendant's duty on appeal to show error and harm affirmatively by the record." (Footnote omitted.) *Williams v. State*, 279 Ga. App. 388, 389 (631 SE2d 417) (2006); see also *Jowers v. State*, 272 Ga. App. 614, 619 (3) (c) (613 SE2d 14) (2005). Burton cannot meet her burden without providing a transcript of closing arguments, and her second enumeration of error must be rejected for this reason as well.

For the reasons set forth above, we affirm the trial court's denial of Burton's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 3, 2008.

*Barbara B. Claridge*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.