## A10A0056. SMITH v. THE STATE.
### (690 SE2d 867)

JOHNSON, Presiding Judge.

A jury found Farris Smith guilty of two counts of armed robbery, two counts of kidnapping, one count of aggravated assault, and one count of possession of a firearm during the commission of a crime. Smith appeals, arguing the evidence was insufficient to support the jury's verdict, he received illegal sentences, and he received ineffective assistance of trial counsel. We find no error and affirm Smith's convictions, but we remand for resentencing on the kidnapping convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that on July 22, 2003, two men wearing ski masks approached victim one, an assistant

---

[1] *Burton v. State*, 293 Ga. App. 822, 823 (668 SE2d 306) (2008).

[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Ratana v. State*, 297 Ga. App. 747, 748 (678 SE2d 193) (2009).

manager at a restaurant, and victim two, her husband who was picking her up from work, as victim one was about to get in their truck. One of the men put a gun to victim one's head, pushed her into the truck, and climbed in behind her. The other man put a gun to victim two's head while he was sitting in the driver's seat and climbed into the back of the truck. The masked men forced the victims to drive away from the restaurant. After numerous turns, the men told victim two to stop on a dark dirt road and demanded the restaurant's deposit bag from victim one. The masked men also took victim two's wallet, which contained $6,000-8,000 from social security and disability benefits, and some cash from victim one's pocket. At one point after stopping, victim two attempted to wrestle the gun away from one of the men and was struck in the mouth with the gun. Once the men took the deposit bag and wallet, they fled the scene. Neither of the victims could identify the men, but they could see black skin around their eyes and mouths.

After a grand jury indicted Smith, Darrick Jones, and Darrick Jones' younger brother, Rochester Jones,[4] the Jones brothers testified against Smith. Darrick Jones stated that he dropped off Smith and Rochester Jones near the restaurant and proceeded to a nearby location where he was to meet the men after the robbery. Smith later returned to the car with a black bag, a bank deposit bag, and a handgun, but Darrick Jones did not see Rochester Jones again until later at Smith's house. According to Darrick Jones, Smith paid him for his part in the robbery using money Darrick Jones got from victim two's wallet. Rochester Jones corroborated his brother's testimony and further testified that both he and Smith had guns and wore ski masks provided by Smith. Rochester Jones also corroborated the victims' testimony, describing the incident in the same manner as the victims. According to Rochester Jones, the men approached the victims at the restaurant, pointed guns at them, and forced victim two to drive to a dark dirt road. Smith and Rochester Jones then took the restaurant bank bag from victim one and a wallet containing a large sum of money from victim two. Rochester Jones forgot where Darrick Jones was waiting with the car, so he ran back to Smith's house.

(a) Smith contends the evidence was insufficient to support the jury's verdict because the state failed to establish that he participated in the robbery. We disagree.

Under Georgia law, a defendant may not be convicted solely

---

[4] While the record does not indicate how police came to suspect either Smith or the Jones brothers, the Jones brothers' testimony indicates that they gave statements to police initially denying involvement, and subsequently, at their father's urging, gave second statements admitting their involvement.

YALE LAW LIBRARY

upon the uncorroborated testimony of an accomplice.[5] However, "[s]light evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict[,] and the sufficiency of the corroborating evidence is for the trier of fact to decide."[6] Here, Rochester Jones' testimony, which implicated Smith as a party to the crimes at issue, was sufficiently corroborated by the testimony and evidence at trial.

It is well settled that the testimony of one accomplice may be used to corroborate that of another.[7] This corroborating testimony need not corroborate the testimony of the first accomplice as to all material facts of the case; it is sufficient if it connects the accused with the commission of the crime and tends to show his guilt.[8] In this case, Darrick Jones' testimony about the circumstances surrounding the planned robbery, Smith's participation in the planning of the robbery, and the party's actions before and after the robbery sufficiently corroborated Rochester Jones' testimony. Rochester Jones' testimony was further corroborated by the victims' descriptions of the events surrounding the robbery. And, the police chief testified at trial that police found two sets of shoe prints at the scene of the robbery, but only one set where Darrick Jones waited with the car, also corroborating the Jones brothers' testimony about what happened after the robbery. The evidence was sufficient for a rational trier of fact to find that Smith participated in the armed robbery.

(b) Smith contends the evidence was insufficient to support the jury's verdict of armed robbery against victim one because the state failed to prove that he took any "currency," as alleged in the indictment, from her. However, victim one testified that the robbers took $47 from her pocket and that the restaurant bank bag contained both "[t]he money for the day and the checks for the day." While Smith argues that Rochester Jones testified there was nothing in the restaurant bag but checks, a review of Rochester Jones' trial testimony reveals that he actually testified that Smith told him there was nothing in the bag except checks. "It is the jury's prerogative to choose what evidence to believe and what to reject,"[9] and here the jury chose to believe victim one's testimony. This enumeration of error lacks merit.

---

[5] OCGA § 24-4-8.

[6] (Citations and punctuation omitted.) *Judkins v. State*, 282 Ga. 580, 581-582 (1) (652 SE2d 537) (2007).

[7] See *Burton*, supra at 825 (1).

[8] Id. at 825-826 (1).

[9] (Citation and punctuation omitted.) *Mobley v. State*, 277 Ga. App. 267, 271 (1) (626 SE2d 248) (2006).

(c) Smith argues the evidence was insufficient to support the jury's verdict of kidnapping because the state failed to prove asportation. We disagree.

Courts must assess four factors when determining whether the movement at issue constitutes asportation: (1) the duration of the movement, (2) whether the movement occurred during the commission of a separate offense, (3) whether such movement was an inherent part of that separate offense, and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[10] According to the Supreme Court of Georgia, assessment of these factors will enable prosecutors and the court to determine whether the movement in question "is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a 'criminologically insignificant circumstance' attendant to some other crime."[11]

Here, one of the armed robbers pushed victim one into the car, the robbers held guns to the victims' heads, the robbers demanded that victim two drive away from the restaurant, the robbers commanded victim two to make numerous turns, and the robbers forced victim two to stop on a dark dirt road. Although the armed robbery could have been completed at the restaurant, the robbers forced the victims to drive to a dark deserted road to "substantially isolate the victim[s] from protection or rescue."[12] This case involves much more than slight movement, and the evidence supports the kidnapping convictions.

2. Although one of the robbers struck victim two in the mouth with a gun, the language "with bodily injury" was not included in the kidnapping counts in the indictment. Nevertheless, the trial court sentenced Smith to life on both kidnapping counts, to be served concurrently. Smith contends he received illegal sentences because he was sentenced to life in prison for kidnapping with bodily injury, but he was only accused of kidnapping. The state agrees.

This Court has held that kidnapping with bodily injury is a distinct offense separate and greater than kidnapping, and it is not proper to sentence a defendant for kidnapping with bodily injury

---

[10] *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008). We note that while the Georgia legislature amended the kidnapping statute, the statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crimes in this case occurred in July 2003, and therefore the standard set forth in *Garza* applies.

[11] Id. at 702.

[12] Id.

where the indictment charges only kidnapping.[13] Accordingly, life sentences on the kidnapping counts at issue in this case were unauthorized, despite the fact that one of the kidnapping victims suffered bodily injury. We thus remand the case to the trial court with the direction that Smith be resentenced on both kidnapping convictions for simple kidnapping in accordance with the dictates of OCGA § 16-5-40 (b).

3. Smith argues he received ineffective assistance of trial counsel because (a) his attorney failed to move for a mistrial or object to the state proceeding against Smith on a different indictment in the midst of trial, (b) his attorney failed to object when the trial judge stopped his cross-examination of a co-defendant regarding the co-defendant's drug-dealing activities, (c) his attorney failed to object to a witness' unsolicited mention of prior bad acts, (d) his attorney failed to object to the trial court's improper instructions, and (e) the cumulative effect of his trial counsel's errors denied him his right to counsel. We find no error.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[14] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[15] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[16] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[17]

(a) *Indictment issue*: The record shows that the state called case number C04-12-162, the State versus Farris Gerald Smith, prior to jury selection on October 17, 2005. The attorneys struck a jury that day. However, prior to the start of trial on October 19, 2005, the state sounded case number C03-12-121, the State versus Farris Gerald Smith. Following the announcement of the case number, the trial

---

[13] *Hester v. State*, 216 Ga. App. 400, 401 (2) (454 SE2d 604) (1995).

[14] *Patterson v. State*, 285 Ga. 597, 600 (5) (679 SE2d 716) (2009).

[15] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[16] *Patterson*, supra.

[17] *Herieia v. State*, 297 Ga. App. 872, 876 (4) (678 SE2d 548) (2009).

judge administered the final oath to the jury. Subsequently, after the victims had testified, the trial judge noticed the error and brought it to the attention of the attorneys. At that time, it was noted that the indictments were identical, with the exception that indictment C04-12-162 contained an additional count of armed robbery, which the trial court severed upon the request of Smith's trial attorney.

The trial court offered Smith the opportunity to choose which indictment he preferred, and Smith elected to proceed under the older indictment, which included the names of the co-defendants and did not need to be redacted. Smith's trial counsel asserted that his only interest was to assure that the jury not have the impression that Smith had two different indictments against him. The trial court then explained to the jury that the case number the jury had been sworn under was a scrivener's error, and that for purposes of the oath the jury had taken, the correct case number was C03-12-121:

> The Court: Ladies and gentlemen, while ya'll were out on break, we made — we found out that we have made what we call a scrivener's error, a typo, in swearing this jury for this case. And the case number that had been cited on the day you were initially selected and the day you were sworn today, one of those numbers is wrong. It was given to you wrong. It was just a typo. And so we are going to set forth on the record — we've gotten it straight in here about what the real number is. You know how you — when you type things down and sometimes they don't come out the way they ought to. So, [state prosecutor], you say for the Court and this jury what case they — case number they are sworn on.
>
> Prosecutor: Yes, Your Honor. It would be Case Number C03-12-121.
>
> The Court: Okay. And do you agree with that, [defense attorney].
>
> Defense Attorney: I do, Your Honor.
>
> The Court: That that's the correct number.
>
> Defense Attorney: That's correct.
>
> The Court: Okay. All right. And so for the purposes of your oath, ladies and gentlemen, that's the case number. We just felt like that we needed to clear up that ambiguity here.

Pretermitting whether trial counsel was ineffective in failing to move for a mistrial or object to the state proceeding under the older indictment given the circumstances in this case, even if error occurred, it is axiomatic that harm as well as error must be shown to

authorize a reversal by this Court.[18]

Here, "[a]ny error in failing to try [Smith] upon a 'perfect' indictment was . . . manifestly harmless."[19] After the trial court severed an armed robbery charge from one of the indictments, the charges were identical in the two indictments, and Smith has not shown that he suffered any prejudice from the state's mistake or by proceeding under the older indictment. In addition, the trial judge's instruction to the jury regarding the mistake dealt with defense counsel's concern that the jury would think Smith had two pending indictments, and the instruction was sufficient to cure any error.[20] Unlike the case cited by Smith's appellate counsel,[21] this is not an instance where the sufficiency of the indictment is at issue. The trial court did not err in finding Smith's trial counsel effective in this regard.

(b) *Cross-examination issue*: While cross-examining Rochester Jones, Smith's counsel asked whether the large amount of cash he was carrying raised any suspicions among his friends about where the money had come from. Rochester Jones replied that it did not because he had that amount of cash on him as recently as five months prior. When Smith's counsel asked Rochester Jones, "How did you get that; another robbery?" Rochester Jones responded, "[s]elling drugs," specifically, cocaine. Neither Smith nor his attorney had anticipated the answer. At that point, the trial judge stepped in and informed counsel, "I'm going to have to tell you that he needs to have representation before you ask him any more questions about something that's not relevant to this case." In a subsequent discussion outside the presence of the jury, Smith's trial counsel informed the trial judge that he did not intend to follow that line of questioning.

Smith now claims he received ineffective assistance of trial counsel because his trial attorney failed to object when the trial judge stopped his cross-examination regarding Rochester Jones' drug involvement. However, even if Smith's trial counsel could have properly objected to the trial court's action,[22] Smith has failed to show any harm by his trial counsel's failure to do so. Smith's trial counsel effectively impeached Rochester Jones by getting him to admit to another crime, and any further questioning regarding the

---

[18] *Zinnamon v. State*, 261 Ga. App. 170, 174 (2) (b) (582 SE2d 146) (2003).

[19] See *Mitchell v. State*, 282 Ga. 416, 419 (4) (651 SE2d 49) (2007).

[20] See generally *Walker v. State*, 290 Ga. App. 749, 750-751 (2) (660 SE2d 844) (2008).

[21] *Dennard v. State*, 243 Ga. App. 868 (534 SE2d 182) (2000).

[22] See *McCarty v. State*, 139 Ga. App. 101, 102-103 (1) (227 SE2d 898) (1976) (the scope of cross-examination rests within the discretion of the trial judge, and a witness may not be discredited by showing previous acts of misconduct).

co-defendant's drug involvement would merely have been cumulative.[23] In addition, Smith did not call Rochester Jones to testify at the hearing on his motion for new trial, and speculation as to what his testimony would have been does not satisfy Smith's burden to show that the result of his trial would have been different if trial counsel had objected to the trial court's action and had trial counsel continued to cross-examine Rochester Jones regarding the drug issue.[24]

(c) *Prior bad acts issue*: Smith's trial counsel called five witnesses who testified about Smith's good character in an attempt to juxtapose his character with that of the Joneses. To rebut Smith's assertion of good character, the state recalled the police chief to the stand to testify that Smith's reputation in the community was "[b]ad." During cross-examination, Smith's counsel asked the police chief how long he had known Smith, and the police chief stated, "Well, I really didn't know him till we started investigating several different crimes about a couple years back. And since then, his name has come up quite prevalent from different people." Smith argues that his trial attorney should have objected to this response. We find no reversible error.

"[C]ounsel will not be heard to object to testimony unfavorable to his client that he elicited."[25] Since any objection would have been fruitless, Smith has failed to show ineffective assistance of counsel in this regard. Moreover, Smith's attorney followed up with a question regarding Smith's criminal history, and the police chief acknowledged that Smith had never been convicted of a felony. Thus Smith cannot show he was harmed by the witness' answer. The trial court did not err in finding trial counsel effective in this regard.

(d) *Jury instruction issue*: In three enumerations of error, Smith claims his trial counsel was ineffective for failing to object to the jury instructions on aggravated assault and possession of a firearm during the commission of a crime, and failing to reserve objections to the jury instructions. The trial court did not err in ruling trial counsel effective on these grounds.

We first note that Smith enumerates as error that his trial counsel was ineffective because he failed to object to the trial court's improper instruction on aggravated assault. However, in the argument section of his brief, Smith argues that the indictment failed to specify the method by which he allegedly committed the predicate offense of assault. Smith does not even mention the trial court's jury

---

[23] See *Hunter v. State*, 281 Ga. 526, 529 (2) (c) (640 SE2d 271) (2007).
[24] See *Tolbert v. State*, 282 Ga. 254, 257 (3) (647 SE2d 555) (2007).
[25] *Patterson*, supra at 600 (4).

instruction. Therefore, he has waived this enumeration of error.[26]

Smith also argues that his trial counsel was ineffective for failing to object to the court's instruction regarding the charge of possession of a firearm during the commission of a crime. We disagree. The trial court instructed the jury:

> [T]his defendant is charged with possession of a firearm during the commission of a crime. In this regard, I charge you that a person commits the offense of possession of a firearm during the commission of a crime when the person has on or within arm's reach of his or her person a firearm during the commission of or any attempt to commit a felony. I further charge you that armed robbery is such a felony.

Smith contends this charge allowed the jury to find him guilty of possession of a firearm during the commission of a crime based on his other felony offenses and not merely the offense of armed robbery, as alleged in the indictment. However, this argument ignores the trial court's additional instruction that the jury find possession of a firearm during the commission of a crime "as alleged in Count 6 of this indictment," which count stated that the felony alleged was armed robbery.

Smith's allegation of ineffective assistance of counsel due to trial counsel's failure to reserve objections to the jury charge is without merit. "Trial counsel's failure to reserve objections to the jury charge falls below an objective standard of reasonableness and therefore constitutes deficient performance only if the charge is objectionable."[27] A failure to reserve objections is not deficient performance where the evidence did not authorize the charge a defendant claims should have been given.[28] Since Smith has not pointed to any jury charge that was objectionable or any jury charge that should have been given but was not, this enumeration of error lacks merit.

(e) *Cumulative effect*: Smith asserts that the cumulative effect of his trial counsel's errors amounted to a denial of his right to effective assistance of counsel. Even assuming Smith's trial counsel made errors, we conclude that Smith failed to establish there is a reasonable probability that, but for counsel's errors, the outcome of his trial would have been different.[29] Accordingly, the trial court did not err in determining that Smith received effective assistance of counsel.

*Judgment affirmed in part and reversed in part and case*

---

[26] Court of Appeals Rule 25 (c) (2).

[27] (Citation omitted.) *Tillman v. Massey*, 281 Ga. 291, 292 (1) (637 SE2d 720) (2006).

[28] *James v. State*, 275 Ga. 387, 389 (6) (565 SE2d 802) (2002).

[29] See *Patterson*, supra at 602 (5) (c).

*remanded for resentencing on the kidnapping convictions. Miller, C. J., and Phipps, J., concur.*

DECIDED FEBRUARY 3, 2010 — 

*Mark A. Yurachek*, for appellant.
*Stephen D. Kelley, District Attorney, Jan Kennedy, Assistant District Attorney*, for appellee.