A10A1383. WATTS v. THE STATE.
(697 SE2d 272)

MIKELL, Judge.

A Newton County jury found Eric Watts guilty of hijacking a motor vehicle, aggravated assault, and aggravated stalking of his wife, Shawn Brown.[1] The trial court sentenced Watts to 30 years, with 12 to be served in confinement and the balance on probation. Watts appeals from the denial of his amended motion for a new trial, contending that trial counsel was ineffective. We affirm.

Viewed in the light most favorable to the verdict, the record shows that Watts and Brown had been in a multi-year relationship that led to their marriage in 1998 or 1999. Throughout their relationship, Watts showed signs of violent behavior, including slapping, punching, and pushing Brown, and burning her clothes. In June 1999, Watts pulled a knife on Brown three times and stabbed her once. In October 2005, Brown became concerned with Watts's behavior and obtained a temporary protective order from the Walton County Superior Court. Watts and Brown attempted to work things out, and on the morning of January 10, 2006, Brown agreed to drive Watts to a doctor's appointment in her aunt's car. When Brown would not follow Watts's directions, he became agitated, called Brown a "bitch," and threatened to kill her and himself. Watts then

[1] *Olubajo v. Deutsche Bank Nat. Trust Co.*, 280 Ga. App. 154 (633 SE2d 543) (2006).
[2] *Lambrix v. Bhimani*, 296 Ga. App. 94, 95 (673 SE2d 620) (2009).
[1] The parties were married on the date of the incident alleged in the indictment, January 10, 2006, but divorced shortly thereafter, on April 16, 2006.

pulled a black-handled poultry knife out of his coat pocket and stabbed at Brown, catching her hand with the blade. Brown testified that she was afraid for her life and that she jumped from the vehicle, which was traveling at approximately 45 mph. Watts steered the car to the side of the road, jumped in the driver seat and sped off. Brown fractured both of her ankles; sustained road rash on her stomach, face, and shoulder; and required stitches on her finger from the knife wound.

Darryl Liesmann testified that he was on his way to the doctor when he observed a woman standing in the middle of the road, waving her hands in the air and screaming "please help me, please help me, he's trying to kill me." As Liesmann stopped to help the woman, she fell into the roadway and he noticed that she had a laceration on her hand that "was bleeding pretty bad." Liesmann asked the woman who was trying to kill her and she said, "my husband." According to Liesmann, he directed traffic around the woman while another motorist called for help.

Deputy Matt Roberts of the Newton County Sheriff's Department testified that when he reported to the scene he observed Brown lying in the middle of the road with abrasions on her face, stomach, and chest, and a "major laceration" on her right hand. Roberts also observed that Brown's left ankle appeared dislocated from her leg. When questioned, Brown described to Roberts the chain of events as recited above, and told Roberts that Watts was trying to kill her. Several hours later, Roberts found Brown's vehicle in front of a residence, five or six miles from the crime scene. Roberts observed a blood splatter on the driver side door and recovered a black-handled knife from the driver side door pocket.

Watts testified at trial and denied the charges, contending that Brown jumped out of the moving vehicle because she wanted to kill herself, and that he panicked and left the scene. Watts admitted turning himself in to police and testified that Brown kept knives in her car. Watts also testified that Brown was receiving public housing (Section 8) and that the vehicle she was driving at the time of the assault was in her aunt's name because "it would have caused a problem in the voucher which is what the government pays the rent. The voucher may have lapsed or she would have had to pay more rent."

In his sole enumeration of error, Watts contends that he received ineffective assistance when trial counsel failed to impeach Brown's credibility with evidence that she forged a nursing license, and committed food stamp fraud, Section 8 fraud, and workers' compensation fraud.

> In order to prove his claim of ineffective assistance of counsel, [Watts] must establish both prongs of the test set out in *Strickland v. Washington*:[2] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[3]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[4] Failure to satisfy either prong of the two-part *Strickland* test is fatal to an ineffective assistance claim.[5] "[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[6] We conduct a de novo review of the lower court's legal conclusions.[7]

At the hearing on the motion for new trial, Watts testified that he advised trial counsel that Brown had forged checks on her uncle Thomas Brown's account and a nursing license; and that she was not a truthful person and had committed food stamp fraud, Section 8 fraud, and workers' compensation fraud. Trial counsel testified that she considered Brown's credibility an important consideration for the jury and, therefore, investigated her background; that she discovered that Brown had pled guilty to a felony and received first offender treatment; that she was not aware that Brown had been convicted of battery in 1995, but that the conviction would not have been admissible during Watts's trial; that she and Watts had discussed that Brown was receiving Section 8 housing even though she may not have been qualified; and that Watts never told her about the forged checks, forged nursing license, or other alleged acts of fraud.

The record supports the trial court's conclusion that trial counsel was not ineffective in failing to impeach Brown's credibility. First, the jury was made aware during Watts's direct examination that Brown may have engaged in a possible Section 8 scheme. Second, trial counsel had no memory of Watts ever advising her of the other alleged acts of fraud and forgery by Brown. Last, trial counsel investigated Brown's criminal background but ultimately

---

[2] 466 U. S. 668, 695-696 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

[3] (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008).

[4] *Strickland*, supra at 694 (III) (B). See also *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

[5] *Thomas*, supra.

[6] (Footnote omitted.) *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

[7] *Robbins v. State*, 290 Ga. App. 323, 329 (4) (659 SE2d 628) (2008).

concluded that neither conviction was admissible.[8] In any event, "the degree to which an attorney chooses to cross-examine witnesses and the manner in which to attack their credibility fall within the ambit of trial tactics."[9]

Additionally, "[t]o establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case."[10] "Absent a proffer of the . . . evidence, [Watts] cannot show that there is a reasonable probability that the outcome of the trial would have been different had counsel taken the suggested course."[11]

In the present case, Watts's only evidence consisted of his own testimony as to the alleged forgeries and fraudulent acts, which was insufficient. Watts was required to offer more than mere speculation; he had to present witnesses or submit evidence to substantiate his claims.[12] The trial court did not err when it denied Watts's motion for new trial on grounds of ineffective assistance of counsel.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 25, 2010.

*Brian K. Ross*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Melanie M. Bell, Assistant District Attorney*, for appellee.

---

[8] See *Pierce v. State*, 281 Ga. App. 821, 822 (637 SE2d 467) (2006), citing *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d .397) (2002) ("[A] victim's character is rarely relevant for any purpose in a criminal trial. While a defendant is entitled to effective cross-examination, he is not entitled to unfettered cross-examination, and the trial court has broad discretion in limiting its scope") (citation omitted).

[9] (Citation and punctuation omitted.) *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002). Accord *Lupoe v. State*, 284 Ga. 576, 579 (3) (e) (669 SE2d 133) (2008).

[10] (Punctuation and footnote omitted.) *Dukes v. State*, 285 Ga. App. 172, 174 (2) (645 SE2d 664) (2007).

[11] (Punctuation and footnote omitted.) Id. See also *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615-616 (458 SE2d 623) (1995).

[12] See, e.g., *Dickens v. State*, 280 Ga. 320, 321-323 (2) (627 SE2d 587) (2006).