## A11A2178. TUCKER v. THE STATE.
(722 SE2d 139)

MIKELL, Chief Judge.

Antron Adon Tucker, convicted by a jury of one count of the sale of Ecstacy[1] and one count of possession of cocaine with the intent to distribute, appeals from the denial of his amended motion for new trial, contending that his trial counsel rendered ineffective assistance by failing to object to several portions of the state's opening and closing arguments.

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[2] We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.[3]

So viewed, the evidence was that, around 9:00 p.m. on August 11, 2006, DeKalb County Police were conducting undercover operations at the intersection of Candler Road and Ember Drive due to recent complaints of narcotics activity in the area. Officer C. S. Baxter was working undercover in an unmarked car and saw a man, later identified as co-defendant Emanuel Berry, standing in the parking lot of the Big Man Package Store next to the ChitChat Lounge. Baxter told Berry she was looking for a man known as "Black"[4] so she could buy some skittles, street slang for Ecstasy. Berry told Baxter that he did not have pills on him, but he could call somebody out. Baxter heard Berry call someone on his cell phone and

---

[1] Specified in the indictment as "3, 4 methylenedioxymethamphetamine."

[2] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

[3] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] Baxter knew no such individual, but used this as a ploy to begin conversation.

say he needed four Ecstasy pills and "more of the usual." Baxter was backed into a parking space in the package store parking lot and waited approximately ten minutes before she saw a white truck pull in two spaces over from her. Tucker was driving the truck and co-defendant Roderick Glass was in the passenger seat. Baxter then handed Berry three $20 bills, which had been photocopied earlier. Baxter observed Berry hand the money to Tucker. She then saw Tucker hand Berry something in one hand and then put little white rocks in little baggies into Berry's other hand. Berry then walked to Baxter and placed the Ecstasy pills into her hand.

Sergeant D. A. Thomas was part of the surveillance and take-down team that followed and stopped the truck. The truck had pulled into and circled the parking lot of the Sunset Lodge and was blocked by officers as it was coming out. Tucker was taken out of the driver's side of the truck and searched by Thomas, who found two of the photocopied $20 bills in Tucker's right front pocket.[5] Another officer found three plastic baggies containing crack cocaine between the driver's floorboard and the driver's door of the truck. Glass, who was in the passenger's seat, was searched and almost $3,000 in cash was found on him.

The evidence was legally sufficient.[6]

In four of his five enumerations of error, Tucker contends that his trial counsel rendered ineffective assistance by failing to object to four specific arguments made by the prosecutor during opening and closing arguments.

To prevail on this issue, Tucker

> must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different. In evaluating the first prong of this test, a strong presumption exists that counsel's conduct falls within the broad range of professional conduct. Failure to satisfy either component of this test is fatal to an ineffectiveness claim. Moreover, the court need not address both components if the defendant has made an insufficient showing on one of them. On appellate review of the trial court's ruling, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[7]

---

[5] The final $20 was not found, but Berry was not arrested until weeks after the buy.

[6] *Al-Amin v. State*, supra.

[7] (Punctuation and footnotes omitted.) *Strickland v. State*, 311 Ga. App. 400, 402 (2) (715 SE2d 798) (2011).

In order to prevail on this issue, Tucker must show that no reasonable attorney would have failed to object to the State's opening and closing arguments and that, had his attorney properly objected, Tucker would have been entitled to a mistrial or would not have been convicted.[8]

1. In his first enumeration, Tucker argues that trial counsel was ineffective for failing to object when the prosecutor shifted the burden of proof onto Tucker by asking the jury during closing argument why he did not present a certain witness and by speculating as to that witness's testimony.

(a) During the State's closing argument the prosecutor argued that Tucker's Aunt Gloria, whom he did not call as a witness, could have corroborated his testimony that he did not have a car and that the truck belonged to co-defendant Roderick Glass. Tucker contends that this was improper "burden shifting" and that there was no foundation showing that Aunt Gloria had knowledge of any facts relevant to the case.

Tucker testified and contended that his co-defendants Berry and Glass were responsible for the drugs and that the white truck he was driving belonged to Glass, his brother-in-law. Tucker said he was only driving the truck because Glass did not have a driver's license and Glass had asked him to drive him to pick up his children. On the way, Tucker decided to go by Berry's location at the ChitChat Lounge to pick up $50 that Berry owed him. Tucker said the Ecstacy pills belonged to Berry and the cocaine belonged to Glass.

Tucker further testified that he lived with his "Auntie" Gloria and that she was home when Glass arrived in the white truck. He also testified that her vehicle was not available to Tucker because it was always being used by her son and daughter. Had she been called, Aunt Gloria could have verified these facts.

"[T]he prosecutor can argue to the jury the inferences to be drawn from the defendant's failure to produce witnesses, who are competent to testify and who allegedly would give evidence favorable to the defendant."[9] Aunt Gloria was such a witness.

Trial counsel testified at the motion for new trial hearing that she "did not see a legal basis" for objection, and we agree that there was none.

(b) Tucker also claims trial counsel should have objected when the prosecutor commented

upon the defense counsel's failure to call Mr. Glass as a

---

[8] *Hayes v. State*, 279 Ga. 642, 645 (3) (619 SE2d 628) (2005).

[9] (Citations omitted.) *Shirley v. State*, 245 Ga. 616, 618 (1) (266 SE2d 218) (1980).

> witness [when] the prosecutor said "it is not unusual for the D.A.'s office to dismiss a case if someone comes forward and says no, those are my drugs, they are not Antron Tucker's . . . . It happens and it happens often. We do dismiss cases when people come forward."

Tucker argues that this argument was "burden shifting" and the prosecutor "improperly invoked her prosecutorial experience and facts not in evidence."

Tucker's brief, however, omits the salient fact that, during his trial counsel's closing argument, she said:

> A couple of other things that I anticipate the State to make a big deal out [sic]. Where is Mr. Berry and where is Mr. Glass? You know, the other people who were arrested. And as much as I would love to have them here, as much as I would love to have them come in and say no, Mr. Tucker didn't do anything, the drugs are all mine, all the drugs are mine, mine, mine, ladies and gentlemen, I have been doing this a long time and I am always surprised when a codefendant comes in and says yes, those drugs are mine, they don't belong to anybody else. It would be nice if people did it that way. It would be nice if they took responsibility for what happened. But in reality they don't.

In her final closing argument, the prosecutor responded:

> They talk about the other codefendants. When I asked, well, why aren't they here? Well it is not unreasonable for them to have been here. . . . I mean I have not been doing this as long as [defense counsel] has been doing it, but it is not unusual for the D.A.'s office to dismiss a case if someone comes forward and says no, those are my drugs, they are not Antron Tucker's, those were not his drugs. That is not unusual. It happens and it happens often. We do dismiss cases when people come forward. But that is not what happened here. The other two codefendants took responsibility, they pled and they were sentenced. And they could have come here, they could have testified and come here and said something else. But you didn't hear that from them.

"Closing arguments are judged in the context in which they are

made."[10] It is apparent that the prosecutor was directly responding to the argument previously made by defense counsel, and there was no error in her doing so.[11]

Tucker has failed to show that defense counsel's failure to object to the argument precipitated by a portion of her own closing was ineffective assistance.

2. Tucker's second enumeration is that trial counsel erred by failing to object when the prosecutor impermissibly vouched for the veracity of the State's witnesses and Tucker's guilt.

Although Tucker isolates several statements which he contends should have elicited objections from his trial counsel, these statements cannot be considered in isolation. They are italicized and are set out below in context:

i. *Now, the main thing that you need to know is that the detectives here and the police officers, they weren't trying to make up this story*, they weren't trying to say that Antron Tucker got outside of the car, went to the officer's window and handed her the drugs. They were very — *They were very honest.* She [Baxter] told you exactly what happened. She said that one of the codefendants was outside. He gave the money to Antron Tucker. Antron Tucker stayed in the car and gave her [sic] the drugs. *They didn't try to make anything up.*

ii. It seems like [defense counsel] wants you to believe some of the [police] report. She wants you to believe the part where the other two codefendants sold the drugs and were found guilty. But she doesn't want you to believe anything that was said about Antron Tucker. *I submit to you that you should believe everything that these officers told you because these officers did not make anything up.*

iii. *We know a crime was committed, because Detective Baxter told you that Antron Tucker sold those drugs.*

iv. She [defense counsel] said he did not sell those drugs because he didn't have any drugs on him. I submit to you he didn't have any drugs on him because he sold them to the officer. And not only that, I am *pretty sure that Mr. Tucker knows the rules.* He knows not to carry a bunch of stuff on him. He said he wasn't that far away from his aunt's house where he supposedly lived. He knows that he wouldn't just have a massive amount of drugs on him riding down

---

[10] *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).
[11] Cf. *Manley v. State*, 284 Ga. 840, 844-845 (2) (b) (672 SE2d 654) (2009).

Candler Road. He only brought the amount he was told to bring.

vi. The aunt could have answered a lot of questions, but instead *we are left with a bogus story*.

vii. *Mr. Tucker's excuse of what happened is as bad as a kid saying the dog ate my homework*. It just does not fly. I submit to you that you guys don't fall for this. And I ask that you find him guilty. Thank you.

> As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence. *Accordingly, it is proper for a prosecutor to urge the jury to draw inferences from the evidence regarding the credibility of witnesses.* Reviewing the prosecutor's closing argument as a whole, and as a response to the defense, we find no improper argument regarding witness veracity.[12]

Trial counsel for Tucker testified during the hearing on the motion for new trial that she saw no legal basis for the objections that Tucker urged in his motion for new trial.

We agree with trial counsel and the trial court that each of the complained of comments by the prosecutor was supported by evidentiary reference and there was no error in her urging the jury to find that a witness was telling them the truth.[13]

3. In his third enumeration, Tucker argues that trial counsel rendered ineffective assistance by failing to object to the prosecutor's "golden rule" argument.

"A 'golden rule' argument directly or indirectly tells the jurors that they should put themselves in the injured person's place and render a verdict that they would wish to receive in the injured person's position."[14]

The objected to statement is italicized in context from the prosecutor's closing argument:

> This is not an innocent man that happened to be in the wrong place at the wrong time. It was the right man at the right time. He got caught. He got caught in your county

---

[12] (Citations and punctuation omitted; emphasis supplied.) *Brown v. State*, 293 Ga. App. 633, 637-638 (1) (d) (ii) (667 SE2d 899) (2008).

[13] *Wright v. State*, 284 Ga. 406, 407 (2) (667 SE2d 611) (2008).

[14] (Citation omitted.) *Futch v. State*, 286 Ga. 378, 382 (2) (c) (687 SE2d 805) (2010).

trying to sell drugs. He just sold it to an undercover officer. Now, you have to ask yourself do you care. *I submit to you that you do care because it is your county, and at the end of the day what is going to be left is it is going to be your family members who are going to be strung out on drugs.* People like Antron Tucker are poison pushers.[15]

"Appeals to convict for the safety of the community have been upheld. Moreover, the State may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard."[16]

Again, there was no error in the trial court's denial of the motion for new trial on this basis.

4. Tucker's fourth enumeration asserts that trial counsel provided ineffective assistance by failing to object when the prosecutor, in her opening statement, told the jury that co-defendants Berry and Glass "have pled and have been sentenced."

Regarding her decision not to object to this, trial counsel testified at the motion for new trial hearing that "[i]f the drugs were not found particularly on my client and if the codefendants are arrested at the same time and had entered a guilty plea, that does not impact on my client's guilt or innocence to that particular incident. . . . I would want them to be guilty."

This was clearly a matter of trial strategy by trial counsel which fell within the bounds of reasonable professional conduct.[17]

There was no error in denying the motion for new trial on this ground.

5. Because we have found none of the above enumerated errors to constitute ineffective assistance of counsel, we need not consider the second prong, i.e., but for the deficient performance of counsel, there is a reasonable probability that the outcome of the trial would have been different.[18]

6. Finally, Tucker argues that the trial court erred in finding that it did not have a sua sponte duty to intervene and prevent the prosecutor's statement regarding the codefendants' pleas of guilty,

---

[15] Again, trial counsel testified that she saw no legal basis upon which to object to this argument.

[16] (Citations and punctuation omitted.) *Bowen v. State*, 203 Ga. App. 371, 374 (5) (417 SE2d 18) (1992). Accord *Byers v. State*, 276 Ga. App. 295, 297 (3) (623 SE2d 157) (2005); *Shaw v. State*, 265 Ga. App. 451, 454 (4) (594 SE2d 393) (2004).

[17] See *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002); *Watts v. State*, 304 Ga. App. 632, 635 (697 SE2d 272) (2010).

[18] *Strickland v. State*, supra.

pursuant to OCGA § 17-8-75.[19]

As discussed in Division 4, supra, trial counsel's strategy was to blame the codefendants and, in her opinion, this portion of the prosecutor's argument was supportive of her trial strategy.

Further, as recently reiterated by our Supreme Court, this statute

> unambiguously indicates that where, as here, a prosecutor has made "statements [to the jury] of prejudicial matters which are not in evidence," and where a proper objection has been raised, "the court *shall* . . . rebuke the counsel [who made the inappropriate statements] *and* by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds."[20]

Therefore, the trial court correctly concluded that, no objection having been made by trial counsel, any alleged error had been waived.[21]

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED JANUARY 12, 2012.

*King & Spalding, Ryan W. Babcock*, for appellant.
*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[19] "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. . . ."
[20] (Emphasis in original.) *O'Neal v. State*, 288 Ga. 219, 221 (1) (702 SE2d 288) (2010).
[21] Id.
[1] 264 Ga. 53 (440 SE2d 646) (1994).