**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A2116. FULLER v. THE STATE                                    MI-080C

MILLER, Presiding Judge.

Following a jury trial, Dontavious Fuller was convicted of two counts of armed robbery (OCGA §16-8-41 (a)), and two counts of possession of a weapon during the commission of a crime (OCGA § 16-11-106 (b) (1)), arising from two separate incidents which were joined for trial.[1] Fuller appeals from the denial of his motion for new trial, contending that (1) the evidence did not support his convictions; (2) the trial court erred in failing to sustain his objection, issue curative instructions or declare a mistrial based on the State's allegedly improper closing arguments; (3) the trial court erred in allowing the State to illicit testimony concerning Fuller's

---

[1] The jury also found Fuller guilty of two counts of aggravated assault (OCGA § 16-5-21 (a) (1)); however, the trial court merged these counts into the armed robbery counts for sentencing purposes.

videotaped confession after ruling that the videotape was inadmissible; and (4) trial counsel was ineffective for failing to object to the State's introduction of Fuller's statements, which were part of his videotaped confession. For the reasons that follow, we affirm Fuller's convictions.

On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict. . . .[W]e neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain that the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Punctuation and footnotes omitted.) *Goss v. State*, 305 Ga. App. 497, 497-498 (1) (699 SE2d 819) (2010).

So viewed, the evidence shows that on January 18, 2010, the first victim, a Domino's Pizza employee, received an order to deliver pizza, wings and bread sticks to a house in Clayton County. When the first victim arrived at the house to deliver the food, two well-built black males wearing hooded face masks yelled at the first victim to give them his money, and the men tasered him repeatedly. The first victim gave the

robbers the $20.00 he had in his pocket. The robbers also took the food and fled the scene.

The detective who investigated the pizza delivery robbery determined that four persons were involved. The detective also linked the phone number used to call in the pizza delivery order to the brother of Fuller's co-defendant, Theo Douglas, at the Clayton County address where Douglas and his brother lived with their parents. Douglas and others identified Fuller as a participant in the robbery of the first victim.

The evidence further showed that the second victim listed a Blackberry cell phone for sale on Craig's List, and exchanged a series of text messages with a person interested in buying the Blackberry. The person sending these texts to the second victim used a phone number linked to Fuller's father, and wanted to meet the second victim at a Wal-Mart in Clayton County.

On January 30, 2010, the second victim met with Fuller and Douglas in the side parking lot of the Wal-Mart to discuss the sale of the Blackberry. While Fuller was speaking to the second victim about the Blackberry, Douglas put a gun to the back of the second victim's neck, searched his pockets, and took the phone and his wallet. Fuller watched the robbery, and then ran into the woods with Douglas.

3

The detective investigating the robbery of the second victim at the Wal-Mart, who had also investigated the pizza delivery robbery, linked a telephone number listed in the police report to Douglas's brother at the address where Douglas and his brother lived with their parents. The detective also determined that Fuller had moved into that house.

The detective obtained a search warrant to enter Douglas's house. The detective and other officers went to the house on or about February 9, 2010 to interview Douglas and his brother. Douglas was at the house when the detective arrived. The detective executed the search warrant at Douglas's house and found the stolen Blackberry there. The detective also found Fuller hiding in Douglas's garage.

Fuller was subsequently arrested on an outstanding sheriff's warrant. After receiving his *Miranda* rights, Fuller voluntarily gave a statement. Fuller stated that he and Douglas met the second victim on the right side of the Wal-Mart. Fuller said that he "played it cool" while Douglas approached the second victim with a gun, and stole the second victim's Blackberry and money. Fuller also stated that Douglas gave him the second victim's Blackberry after the robbery and Fuller identified the stolen Blackberry during the police interview.

Fuller was indicted for armed robbery and possession of a weapon during the commission of a felony offense stemming from the armed robbery of the first victim. Fuller was also indicted for armed robbery and possession of a weapon during the commission of a felony offense arising from the armed robbery of the second victim.[2]

At trial, the second victim identified Fuller as the person who robbed him at the Wal-Mart. The first victim did not identify his assailants at trial. However, Douglas, who pled guilty to charges arising from both armed robberies, testified at trial that Fuller had actively participated in both of the robberies.

1. On appeal, Fuller contends that the evidence did not support his convictions for armed robbery and possession of a weapon during the commission of a crime. We disagree.

"A person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). A person commits the offense of possession of a firearm during the commission of a felony when he has on or within

_____

[2] Prior to trial, the trial court granted the State's motion for joinder of the charges arising from the two robberies.

5

arm's reach of his person a firearm during an armed robbery. See OCGA § 16-11-106 (b) (1). The term firearm includes stun guns and tasers. See OCGA § 16-11-106 (a). "Where a robbery is committed by the use of a firearm, separate convictions for armed robbery and possession of a firearm during the commission of a crime are specifically authorized by OCGA § 16-11-106 (e)." (Citations and punctuation omitted.) *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). Moreover, this Court has held that

> where a party has committed armed robbery and possession of a firearm during commission of a felony, an accomplice who is concerned in the commission of those crimes under OCGA § 16-2-20 is likewise guilty of both offenses, notwithstanding the fact that the accomplice did not have actual possession of the firearm.

(Citation and punctuation omitted.) *Bryson v. State*, 316 Ga. App. 512, 514 (1) (729 SE2d 631) (2012); see also *Howze*, supra, 201 Ga. App. at 97. Furthermore, in accordance with OCGA § 16-2-20 (a), "[a]ny person concerned in the commission of a crime is a party to it and may be convicted as a principal." (Citations and punctuation omitted.) *Wilcox v. State*, 177 Ga. App. 596 (340 SE2d 243) (1986). Although "mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and

6

conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation and punctuation omitted.) *Bryson*, supra, 316 Ga. App. at 514 (1).

(a) The robbery of the first victim.

The trial evidence showed that four persons, including Fuller, were involved in the robbery of the first victim, who delivered an order of pizza, wings and bread sticks to a house in Clayton County. The evidence also showed that two of the men were well-built black males wearing hooded face masks who yelled at the first victim to give them his money, and tasered the first victim repeatedly. However, the evidence of Fuller's active participation in the armed robbery of the first victim rested heavily on Douglas's testimony, because the first victim did not identify his assailants at trial.

The uncorroborated testimony of an accomplice is insufficient to support a felony conviction. See OCGA § 24-4-8 (2011). Furthermore, as the Supreme Court of Georgia has noted, the corroboration rule "is made more stringent by the requirement, not contained in the statute, that the [S]tate must provide corroboration of an accomplice's testimony regarding the identification and participation of the

7

defendant." (Footnote omitted.) *Parkerson v. State*, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995). Nevertheless,

> [s]light evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict. Moreover, the corroborating evidence itself need not be sufficient to warrant conviction, but only tend to connect and identify defendant with the crime. The corroborating evidence may consist entirely of circumstantial evidence and may include [the] defendant's conduct before and after the crime was committed.

(Punctuation and footnote omitted.) *Gilmore v. State*, 315 Ga. App. 85, 87-88 (1) (726 SE2d 584) (2012). Moreover,

> [i]t is well settled that the testimony of one accomplice may be used to corroborate that of another. For an accomplice's corroborating testimony to authorize a conviction, it need not corroborate the testimony of the other accomplice as to all the material facts of the case. It is sufficient if it connects the accused with the commission of the crime, and tends to show [his] guilt.

(Citations and punctuation omitted.) *Burton v. State*, 293 Ga. App. 822, 825-826 (1) (668 SE2d 306) (2008).

8

Here, the State presented at least slight evidence connecting and identifying Fuller with the crime. Notably, another participant in the robbery of the first victim testified at trial that the four men, including Fuller, were together during the robbery and all four men ran off and ate the pizza afterwards. Although the second accomplice's testimony did not provide strong corroboration of Douglas's testimony, it was sufficient to connect Fuller with the crime and tended to show his guilt. See *Burton*, supra, 293 Ga. App. at 825-826 (1). Thus, when viewed in the light most favorable to the jury's verdict, the evidence was sufficient to authorize the jury to convict Fuller of armed robbery and possession of a firearm during the commission of a crime.

(b) The robbery of the second victim.

Fuller challenges the second victim's credibility, contending that the second victim had no idea about who really robbed him until nearly two months after the fact.

> We do not determine the credibility of eyewitness identification testimony. Rather the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury. OCGA § 24-4-8 provides that the testimony of a single witness is generally sufficient to establish a fact.

9

(Citations and punctuation omitted) *Colzie v. State*, 289 Ga. 120, 121 (1) (710 SE2d 115 (2011). The second victim identified Fuller at trial as the man he spoke to about selling the Blackberry while Douglas put a gun to his neck, searched his pockets and took the Blackberry and wallet.[3] The second victim's testimony was sufficient for the jury to find that Fuller actively participated in the robbery. See *Colzie*, supra, 289 Ga. at 121 (1). Moreover, Fuller's flight from the scene with Douglas provided an additional circumstance from which the jury could infer his guilt. See *Woodruff v. State*, 233 Ga. 840, 842 (1) (213 SE2d 689) (1975) (holding that "evidence of flight may be admitted as one of a series of circumstances from which guilt may be inferred") (Punctuation omitted). Thus, the evidence was sufficient to authorize the jury to convict Fuller of armed robbery and possession of a firearm during the commission of a crime under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[3] Fuller contends on appeal that the pre-trial photo identification was tainted, however, he did not object to the in-court identification at trial, and thus has waived his right to raise that issue on appeal. See *Baxter v. State*, 188 Ga. App. 598, 600 (3) (373 SE2d 834) (1988). We also reject Fuller's contention that the second victim identified Fuller because he was the only one sitting at the defense table. Simply seeing Fuller at the defense table did not automatically taint the second victim's in-court identification. See *Buchanan v. State*, 273 Ga. App. 174, 179 (1) (b) (614 SE2d 786) (2005).

2. Fuller contends that the trial court erred in failing to sustain his objection to the State's closing argument concerning the Clayton County Police Department's workload. Fuller also contends that the trial court erred in failing to issue curative instructions or declare a mistrial based on this argument. We do not agree.

(a) Fuller argues that during closing argument, the State commented on the veracity of the officer witnesses by stating that the Clayton County Police were overloaded with work.

With the exception of Fuller's objection to the State's comments, closing arguments in this case were not transcribed. "[W]here the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f)." (Citation, punctuation and footnote omitted.) *Carswell v. State*, 251 Ga. App. 733, 736 (3) (555 SE2d 124) (2001). Here, the limited record on this issue shows that, when Fuller objected to the State's concluding argument, the prosecutor responded that he was merely pointing out that police officers have enough work and are not going to falsely accuse someone. The prosecutor also stated that he was not attributing anything to Fuller. After Fuller declined an opportunity to respond to the prosecutor's explanation, the trial court overruled trial counsel's objection.

Closing comments are judged in the context in which they are made. See *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

> As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence.

(Citations and punctuation omitted.) *Tucker v. State*, 313 Ga. App. 537, 542 (2) (722 SE2d 139) (2012). The prosecutor cannot state his personal belief as to the veracity of a witness, however, the prosecutor can urge the jury to draw such a conclusion from the evidence. See *Adams*, supra, 283 Ga. at 302 (3) (e).

Here, the State's closing comments that the officers would not falsely accuse someone were merely comments urging the jury to make a deduction about the officers' veracity from the facts, and such comments do not constitute an opinion about the officers' veracity. See *Manley v. State*, 284 Ga. 840, 844-845 (2) (b) (672 SE2d 654) (2009) (holding that the State did not improperly comment on the veracity of its witnesses when the State argued in rebuttal that the investigators, officers and prosecuting attorney would not sacrifice their careers to frame the defendant); see also *Tucker*, supra, 313 Ga. App. at 541-542 (2) (holding that the prosecutor's closing

12

argument did not improperly vouch for the veracity of the State's witnesses even when the prosecutor argued that the detectives and officers were not trying to make up a story). Accordingly, Fuller has not shown that the State's concluding argument improperly opined on the veracity of the officer witness.

(b) Fuller also argues that the trial court erred in failing to issue a curative instruction or declare a sua sponte mistrial because the State's closing comments alleged facts that were not in evidence.

Where the prosecutor improperly injects into the case prejudicial statements on matters outside the evidence, and defense counsel objects, the trial court has an independent duty to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial. See *O'Neal v. State*, 288 Ga. 219, 221 (1) (702 SE2d 288) (2010); see also OCGA § 17-8-75. However, in the absence of a request for a mistrial,

> the trial court [is] required to act sua sponte only if there [is] a manifest necessity for a mistrial. And manifest necessity requires urgent circumstances. A trial court's decision whether to grant a mistrial lies within its discretion based upon a consideration of the totality of the surrounding circumstances. Thus, a trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference. This deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.

13

(Citations and punctuation omitted.) *Gonzalez v. State*, 310 Ga. App. 348, 350-351 (2) (714 SE2d 13) (2011). Closing arguments in this case were not transcribed, and the limited record on this issue does not show that the State's closing argument alleged facts not in evidence. Accordingly, the record does not demonstrate that the trial court erred by failing to fulfill its duty under OCGA § 17-8-75, or that manifest necessity required a mistrial. Moreover, even if the trial court did err, it is highly probable that such error did not contribute to the verdict since the trial court specifically instructed the jury that the closing arguments of counsel did not constitute evidence and the jury acquitted Fuller of three additional counts arising from a third armed robbery.[4] See *O'Neal*, supra, 288 Ga. at 223 (2).

3. Fuller contends that the trial court erred in allowing the State to illicit testimony concerning Fuller's videotaped confession after the trial court ruled that the videotape was inadmissible under the discovery statute. We disagree.

> The discovery statute grants broad discretion to the trial court in remedying any violations of its provisions. The court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the

---

[4] Fuller was also indicted for armed robbery and two counts of aggravated assault arising from a March 2010 robbery. The jury acquitted Fuller of these counts.

14

[S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial.

(Citations and punctuation omitted.) *Rooks v. State*, 238 Ga. App. 177,178 (1) (518 SE2d 179) (1999); see also OCGA § 17-16-6. "Before the harsh sanction of excluding evidence will be imposed by the trial court under OCGA § 17-16-6, the defendant must show both that he was prejudiced and that the [S]tate acted in bad faith." (Footnote omitted.) *Romero v. State*, 247 Ga. App. 724, 726 (545 SE2d 103) (2001).

At trial, Fuller objected to the admission into evidence of his videotaped interview based on the State's failure to produce a copy of the recording 10 days before trial as required by OCGA § 17-16-4 (a) (1). Although the trial court excluded the videotape from evidence due to the discovery violation, the trial court did not rule that Fuller's statements were inadmissible. Thus, contrary to Fuller's argument, the State did not elicit testimony concerning the contents of the videotape in violation of the trial court's ruling under the discovery statute.

Moreover, this Court may look to all evidence in the record in determining the admissibility of Fuller's confession, and our review of the record does not show that a motion to suppress would have been successful. See *Haynes v. State*, 269 Ga. 181, 183-184 (4) (496 SE2d 721) (1998). Notably, the detective testified that Fuller was not threatened or coerced into making his statements, he did not appear to be under the influence of any medicines or intoxicants, and he freely and voluntarily made his statements after receiving his *Miranda* rights verbatim. Accordingly, the trial court did not err in allowing the detective to testify to Fuller's statements.

4. Fuller contends that his trial counsel was ineffective for failing to object to the State's introduction of Fuller's statements which were part of his inadmissible videotaped confession. Again we disagree.

> To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing that counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different . . . The trial court's determination with respect to effective assistance of counsel will be affirmed unless its findings are clearly erroneous.

16

(Citations and punctuation omitted.) *Robinson v. State*, 312 Ga. App. 736, 742 (3) (719 SE2d 601) (2011).

At the motion for new trial hearing, trial counsel testified that he probably would have filed a motion to suppress Fuller's videotaped statements, but he did not have an opportunity to do so after he watched the videotape. However, trial counsel conceded that the evidence was overwhelming and Fuller would not have had a better chance at trial if the trial court had excluded Fuller's videotaped statements. In denying Fuller's motion for new trial, the trial court found that although trial counsel was deficient, Fuller failed to show that the outcome of his trial would have differed but for trial counsel's error.

As we held in Division 3 above, the detective's testimony regarding Fuller's statements was admissible. Moreover, given the other admissible evidence of his guilt, Fuller did not show that there was a reasonable probability that the outcome of his trial would have differed but for trial counsel's failure to object to the introduction of his statements at trial. See *Rouse v. State*, 295 Ga. App. 61, 65-66 (2) (670 SE2d 869) (2008). Accordingly, the trial court did not clearly err in finding that Fuller failed to show prejudice from trial counsel's performance.

*Judgment affirmed. Ray and Branch, JJ., concur.*