**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 17, 2013

# In the Court of Appeals of Georgia

A13A0170. BIGGINS v. THE STATE.

RAY, Judge.

Raheen Jamal Biggins appeals from his conviction for armed robbery, OCGA § 16-8-41, arguing that the evidence was insufficient to support the verdict,[1] that the trial court erred in failing to remedy an alleged *Brady* violation, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that the victim, Herlynda Castro, was working as a paid confidential informant for the Chatham-Savannah Counter Narcotics Team (CNT), a law enforcement unit that sets

---

[1] Biggins was tried along with a co-defendant, Jamari Kareem Reynolds, but Reynolds is not party to this appeal.

up undercover purchases of illegal drugs. Castro arranged to purchase crack cocaine at a park near a middle school, where the purchase would be under surveillance by CNT agents on the scene and via an audio recording device on Castro's person as well as an open line on her cell phone. The drug dealers approached Castro at the park, and she got into their car. After driving a short distance, the front-seat passenger, Biggins, demanded money from her, pulled out a gun, and threatened to shoot her in the face. Castro gave $450 to the backseat passenger, Andre Heyward. Although Castro testified that she snatched the money back from Heyward when she realized the men were not going to give her the drugs, after Biggins threatened to shoot her in the face, she gave the money to him. Castro then got out of the car and walked away.

Todd Desautels, a CNT agent, testified that while surveilling the park, he saw the drug dealers' car and identified Biggins as the front-seat passenger. After Castro was robbed, Desautels and other officers pursued the vehicle in which Biggins was riding, blocked it, and approached it while wearing black Kevlar vests emblazoned with the word "Police." Desautels approached Biggins' window with his gun drawn and demanded that Biggins "show me his hands," but Biggins instead began reaching toward his foot. Desautels punched the windshield to get Biggins' attention and

2

Biggins then put his hands up. Another agent used a baton to break the driver's side window, but the driver backed the car up and fled, with the agents in pursuit. Agents used a "pursuit intervention technique," or PIT, maneuver to stop the vehicle, and the vehicle flipped sideways and rolled over, coming to a stop. As Desautels approached the vehicle, he saw Biggins crawl out an open window and drop some money. Desautels ordered Biggins to "stay on the ground." When Biggins disobeyed and attempted to push himself off the ground, Desautels arrested him.

Jason Parrish, an officer with the CNT at the time of the incident who was at the scene of the arrest, testified that agents found $450 on the ground. Biggins told him that it was his money. Parrish testified that when he compared Biggins' money to photocopies of the cash agents gave Castro to make the drug purchase, "it was the same money that we gave to the CI," that is, to Castro as the confidential informant.

1. As an initial matter, we address the deficiencies in Biggins' brief, which contains compound enumerations of error, as well as assertions within those enumerations that are not supported by argument or by citation to authority or to the record, in contravention of Court of Appeals Rule 25 (c). We also note that Biggins has failed to include a statement of the method by which each alleged error was preserved for consideration, as required by Rule 25 (a) (1), and that he has failed to

3

provide an applicable standard of review for each issue presented, as required by Rule 25 (a) (3). Our requirements for appellate briefs

> were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court . . . . Further, this Court will not cull the record in search of error on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel.

(Footnotes and punctuation omitted.) *Fitzpatrick v. State*, 317 Ga. App. 873, 874 (1) (733 SE2d 46) (2012). Finally, Biggins' appellate brief indicates that additional information is necessary to support his arguments, and the brief makes several references to information to be contained in a forthcoming motion to supplement the record. No such motion was filed with this Court.

2. Biggins contends that the evidence was insufficient to convict him.

"A person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). Furthermore, "[i]n accordance with OCGA § 16-2-20 (a), any person concerned in the commission of a

crime is a party to it and may be convicted as a principal." (Citation and punctuation omitted.) *Bryson v. State*, 316 Ga. App. 512, 514 (1) (729 SE2d 631) (2012).

Here, the evidence showed that Castro was robbed, inside a vehicle, by men armed with a gun. Castro spent time in the vehicle with the men, and identified Biggins as the robber holding the gun and to whom she ultimately was forced to give $450. A police officer also identified Biggins as one of the occupants of the vehicle. We do not determine the credibility of eyewitness identification testimony, and any conflicts in that testimony, as well as questions about its accuracy, are within the exclusive province of the jury. *Fuller v. State*, __ Ga. App. __ (740 SE2d 346) (2013). Even though no gun was introduced into evidence at trial, because the driver fled the vehicle, a reasonable jury could have inferred that he took the gun with him and disposed of it. Castro also testified that Biggins' pointed a gun at her, and the jury heard a recording taken from the device Castro was wearing during the crime, where a male in the vehicle is heard threatening her and saying, "get the f— out 'fore I shoot you in the face right now." Moreover, Biggins dropped $450 on the ground and claimed that the money was his. A police officer identified the bills as the same ones that had been given to Castro as a confidential informant to complete the drug buy. See *Puente v. State*, 249 Ga. App. 398, 398 (548 SE2d 109) (2001) (evidence

sufficient where, although no gun was presented at trial, ammunition was found in getaway vehicle, as were bills matching the denominations of the money that was stolen). Further, Biggins' attempt to flee, first in the car and later after it crashed, provided an additional circumstance from which the jury could infer his guilt. See *Fuller*, supra at (1) (b). The evidence was sufficient to sustain Biggins' conviction.

3. Biggins contends that his trial counsel was ineffective.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt. 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, supra at 697 (IV). Further, "we accept the trial court's factual findings and

6

credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill*, supra.

(a) Biggins first argues that he received ineffective assistance because he failed to accept a plea offer as the result of his trial counsel's failure to advise him that, as a recidivist, he was facing a mandatory life sentence without parole. Biggins now contends that had he known the life sentence was mandatory, he "probably" would have accepted the State's plea offer.

The record shows that the State offered Biggins a guilty plea in exchange for a 10-year sentence, and at the start of trial, discussed this offer with the Court in Biggins' presence. The Court informed Biggins that if convicted, he would have to serve "every day" of his sentence, and that the sentencing range was a minimum of 10 years to a maximum of life in prison. When asked by the Court if he understood the sentencing range and the plea offer, Biggins twice responded, "Yes, sir," and stated that he wished his case to go before a jury. At the post-trial sentencing hearing, the State presented evidence of Biggins' two prior convictions. The trial court said, "I think it's a mandatory sentence," and Biggins' counsel agreed, although there was no discussion of what that mandatory sentence was. The trial court then sentenced Biggins to life in prison because of his prior record. Biggins did not contest the

sentence at that time, but later obtained new counsel and moved for a new trial, in part, on this ground. At the hearing on his motion for new trial, both Biggins and trial counsel testified that they discussed the plea offer. Trial counsel also testified that he informed Biggins several times that because of his recidivist status, he "could conceivably be looking at a life sentence," and explained that the plea offer was a "very good offer relatively speaking, because of the amount of exposure that he faced if he went to trial." However, trial counsel testified that Biggins wanted a jury trial. Without making any express factual findings, the trial court denied Biggins' motion for new trial. Because the factual determinations implicit in the court's denial of the motion were not clearly erroneous, we affirm.

Despite Biggins' contentions, the law on this issue is well settled. "Objective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made and *to be advised of the consequences of the choices confronting him.*" (Footnote omitted; emphasis added.) *Lloyd v. State*, 258 Ga. 645, 648 (2) (a) (373 SE2d 1) (1988). In determining whether a defendant has been prejudiced by counsel's failure to communicate those choices accurately, we must examine the facts of each case to determine whether "there is at least an inference from the evidence that defendant would have accepted the offer as

8

made or something similar." (Footnote omitted.) Id. at 648 (2) (b). Where, a here, the case involves counsel's failure to accurately advise a client of the consequences of rejecting a plea rather than counsel's per se failure to communicate a plea, the *Lloyd* case-by-case analysis controls. *Muff v. State*, 210 Ga. App. 309, 311 (2) (436 SE2d 47) (1993). We also have recognized the "self-serving nature of a defendant's post-conviction testimony regarding his intent with respect to a plea offer, [and] have required some further 'objective evidence' that defendant would have accepted a plea offer." (Footnote omitted.) *Childrey v. State*, 294 Ga. App. 896, 899 (670 SE2d 536) (2009).

In *Sutton v. State*, 263 Ga. App. 188, 189-190 (1) (587 SE2d 379) (2003), we held that the defendant was adequately informed of the risks of going to trial even though the trial court told him the sentencing range for armed robbery ranged from 10 years to life in prison, then upon conviction, gave him a statutorily mandated life sentence because he was a recidivist. Likewise, in *Whitehead v. State*, 211 Ga. App. 121, 122-123 (438 SE2d 128) (1993), although defense counsel failed to inform defendant that he was facing a mandatory life sentence, defendant unquestionably had been told that a life sentence was a possibility when he rejected the plea in favor of going to trial. This Court determined that the defendant had been adequately informed

9

that the consequences of refusing the State's offer could be harsher than the consequences of accepting it. Id. In *Carson v. State*, 264 Ga. App. 763, 764-765 (592 SE2d 161) (2003) we declined to find counsel ineffective for failing to inform defendant of a mandatory life sentence because counsel had told the defendant of the possibility of a life sentence, and the trial court had told defendant of the range of possible sentences he could face if he rejected the State's plea offer.

Biggins argues that he has raised the requisite inference that had he been informed that he faced a mandatory life sentence, he would have accepted the State's offer. The State counters that despite being informed of the possibility of a life sentence, Biggins still rejected the plea. The record further shows that even after being informed that he could face a life sentence, Biggins "continued to assert his innocence and that he wanted to go have a trial by jury." Biggins also testified at the hearing on his motion for new trial that despite his understanding that the State's plea offer was the lowest sentence he could get, he felt like he "had a better chance of winning my case" by going to trial. This evidence presents factual issues primarily for resolution by the trial court, and "supports a finding, implicit in the trial court's ruling, that there was no reasonable probability that [Biggins] would have pled guilty but for counsel's ineffectiveness." (Punctuation and footnote omitted.) *Childrey*,

10

supra at 901. Accord *Cleveland v. State*, 290 Ga. App. 835, 839 (2) (660 SE2d 777) (2008). "Because [Biggins] knew that he could receive a life sentence, he was sufficiently apprised of the risks of going to trial." (Footnote omitted.) *Sutton*, supra at 190 (1). We find that based on the evidence, the trial court was authorized to conclude that Biggins' claim that he "probably" would have accepted the plea lacked credibility, and as a result, Biggins has not shown prejudice and the trial court did not err by rejecting his ineffective assistance claim. See *Childrey*, supra.

(b) Biggins next argues that he received ineffective assistance because his trial counsel did not seek to suppress out-of-court eyewitness identifications of him as a perpetrator, contending that the identification procedures were impermissibly suggestive.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Rivers v. State*, 283 Ga. 1, 5 (3) (b) (655 SE2d 594) (2008). Testimony about pre-trial identification should be suppressed if it is so suggestive that it gives rise "to a substantial likelihood of misidentification. An identification procedure is impermissibly suggestive when it leads the witness to an

11

'all but inevitable identification' of the defendant as the perpetrator[.]" (Citation and punctuation omitted.) *Id.*

Although Biggins contends that a showup identification procedure at the arrest scene was impermissibly suggestive, his argument and record citations focus only on a pre-trial photographic identification procedure in which he alleges that a police officer influenced Castro to identify suspects through a "process of elimination." At trial, Castro testified that by looking at police photographs, she told officers where each suspect was seated in the car. She testified that she identified *the driver* of the car, Reynolds, whose face she did not see, by a "process of elimination," deducing the driver's identity in the photograph because "I knew the person that had the gun [Biggins, the front-seat passenger] , I knew what he was wearing. And I knew what the guy in the back seat, what his face looked like. So that left the last one to be the . . . driver." Biggins' counsel was not ineffective for failing to attempt to exclude an allegedly suggestive eyewitness identification of a defendant *who was not his client*.[2]

---

[2] Biggins further argues the pre-trial identification was impermissibly suggestive because the officer allegedly wrote on the back of the photographs where each suspect was seated in the vehicle. Biggins cites to no testimony in the record on this issue, and provides no record citations to the photographic exhibits referenced, nor did we find any photographic exhibits containing the writing Biggins' references.

We thus find no merit in Biggins' contentions of ineffectiveness on this point, as he has failed to show either deficiency of prejudice.[3] See *Strickland*, supra.

(c) Finally, Biggins argues that his trial counsel was ineffective in failing to investigate his case, offering a scattershot list of counsel's alleged failures in a footnote, but providing no record citations or supporting argument as to any specific allegation.

At the motion for new trial hearing, trial counsel testified that he had met with Biggins "dozens" of times; kept a detailed trial notebook; that although he did not hire a private investigator, trial counsel visited the crime scene, interviewed CNT officers, ran background checks on civilian witnesses but not police officers or Castro, and that he thoroughly reviewed all discovery. Biggins failed to elicit any specific testimony from any witness at the hearing on his motion for new trial, and failed to show how the evidence or testimony his counsel allegedly failed to procure likely would have affected the outcome of his trial.

---

[3] Biggins also argues that his trial counsel was ineffective for failing to "suppress" Castro's in-court identification of him as the man with the gun because it was impermissibly suggestive. "Challenges to in-court identifications must be made through cross-examination. Therefore, any pre-trial motion to exclude the in-court identifications would have been meritless, and [Biggins] cannot meet his burden under *Strickland* on that basis." (Punctuation and footnotes omitted.) *Brown v. State*, __ Ga. App. __ (3), (739 SE2d 819) (2013).

"We will not consider such bare-bones claims." (Citation omitted.) *Zamora v. State*, 291 Ga. 512, 516 (6) (731 SE2d 658) (2012). "To show prejudice, the defendant is required to offer more than mere speculation that, absent counsel's alleged errors, a different result probably would have occurred at trial." (Citation and punctuation omitted.) Id. Thus, the trial court correctly denied his ineffective assistance claim.

4. Finally, Biggins contends that the trial court erred in failing to remedy the State's alleged violation of *Brady v. Maryland*, 373 U. S. 83 (83 SCt. 1194, 10 LE2d 215) (1963). Biggins argues that the trial court did not require the State to produce evidence or certify that none existed as to the personnel files of testifying officers,[4] and that such evidence could have been favorable to the defendant and material to his guilt or punishment.

> Fundamental to any error based upon a violation of *Brady* is that appellant must prove that: (1) the State possessed evidence favorable to the defense, i.e., true *Brady* material; (2) the defense did not possess the evidence, nor could he obtain it himself with any reasonable diligence; (3) the prosecution suppressed favorable evidence; (4) he was denied access to such evidence during trial; (5) the disclosure would have

[4] Biggins concedes that he withdrew a *Brady* claim as to Castro, so this issue is not before us.

14

benefitted the defense by providing evidence for the defense or impeaching prior inconsistent statements; and (6) the denial deprived him of a fair trial, i.e., a reasonable probability exists that the outcome of the proceedings would have ben different had disclosure been made.

(Citations and punctuation omitted.) *Verlangieri* v. State, 273 Ga. App. 585, 591-592 (2) (615 SE2d 633) (2005).

Although Biggins contends that "[e]xtra-record material that Appellant must refrain from citing (but will attempt to make part of the record in the forthcoming Motion to Supplement) indicates the existence of problems in certain officer's records that would have gone to credibility and therefore should have been disclosed," Biggins never supplemented the record and has not provided any provides citation to the record for his *Brady* argument. his contentions are so general that he has in no way met his burden under *Brady*. See *Willis v. State*, 263 Ga. 597, 599 (3) (436 SE2d 204) (1993). This claim of error fails.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

15