**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J. and SELF, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 2, 2017**

# In the Court of Appeals of Georgia

A17A0975. REED v. THE STATE.                              SE-030

SELF, Judge.

Timmy Lane Reed pled guilty to one count each of trafficking in methamphetamine, possession of marijuana with intent to distribute, and possession of more than an ounce of marijuana. The trial court sentenced him to serve 15 years in prison. Reed appeals, contending that the trial court erred in failing to sentence him below the mandatory minimum pursuant to OCGA § 16-13-31 (g) (2) (A). We disagree and affirm.

The facts in this case are not in dispute. In the summer of 2015, the Cherokee County Multi Agency Narcotics Squad ("CMANS") received a tip that Reed was selling methamphetamine. On three separate occasions, beginning on July 23, 2015, CMANS used an undercover agent and confidential informant to purchase from Reed

between 1.2 grams and 1.9 grams of methamphetamine for "a hundred dollars cash" each time. Based on these three purchases, CMANS officers obtained a warrant to search his residence. Officers recovered 211 grams of methamphetamine, 516 grams of marijuana, and $4,678 in cash. At the time of the search, three individuals were present in the residence, including Reed, Reed's neighbor, and Reed's girlfriend, Sherri Satterfield. The neighbor was working on Reed's vehicle and admitted to having used methamphetamine provided to him by Reed that morning in exchange for the work. Reed claimed his girlfriend knew nothing about the drugs found in the home.

Reed admitted to possessing four to five ounces of methamphetamine and to selling it "to make a buck" because he had lost his job. Reed told officers that he made two sales every week and that he sold approximately four ounces every two to three months. Officers arrested Reed and transported him to the Cherokee County Adult Detention Center.

A week after his arrest, narcotics agents intercepted a phone call from the jail between Reed and a family member discussing something buried in his yard. After talking with the family member, officers obtained a second warrant to search the

residence and discovered $22,433 and 11.8 grams of methamphetamine buried in a container in the yard.

Reed and Satterfield were jointly indicted on one count each of trafficking in methamphetamine, possession of marijuana with intent to distribute, and possession of more than an ounce of marijuana. Reed pled guilty to all three charges and the trial court sentenced him as a first offender to 15 years.

The trial court sentenced Reed under OCGA § 16-13-31 (e) (2), which provides:

> Any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine and, upon conviction thereof, shall be punished as follows:. . . (2) If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 200 grams or more, but less than 400 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and shall pay a fine of $300,000.00.

The trial court declined Reed's request for a deviation from the mandatory minimum sentence. See OCGA § 16-13-31 (g) (2). It reasoned:

There are a lot of instances where [s]tatutes that deny discretion to the Court work – don't always work to what might be the best justice in a case.

This . . . particular [s]tatute has . . . eased somewhat . . . in providing discretion, but it is a very limited discretion . . . and defined in Section (2) (a) – (g) (2) (a).

And . . . I believe that the Governor has begun to re-examine . . . the drug laws and to try and create a perhaps a more rational structure than . . . before. I think the focus of that is . . . on addiction . . . and the harm that addiction causes.

I also believe that mandatory minimums for dealing . . . don't always work the perfect justice, but I understand them because I see every day the impact of what you peddle. I see children who are neglected, abused, who die because of people who are so – whose lives are so wrecked by methamphetamine that they can't be parents. I see spousal abuse, theft, and all manner of violence. I can't even begin to explain to you what kind of – how methamphetamine tears at the fabric of this community.

And this [s]tatute is designed with that in mind, not to punish the user. There are [s]tatutes that punish users, to – that address the violation of – of addiction and use. This [s]tatute does what – the only thing the Legislature knows how to do, is to try to stop the flow of drugs into the community from the source. And in reviewing the elements of deviation, which I'm required to find all of them in order to deviate, it's an and, not

4

an or, at the top of the list, I don't think I can find that you were not a leader and . . . I really don't think that the interest of justice would be served by an imposition of a lesser sentence.

Reed contends that the trial court abused its discretion in failing to depart from the 15-year mandatory minimum "based on quantity alone." Reed asserts that under OCGA § 16-13-31 (g) (2), more than mere quantity must be considered and, in Reed's case, there was no aggravating evidence. Specifically, the State presented no evidence that Reed was a "leader" or "kingpin" or that he maintained an organized methamphetamine distribution network; no firearms were involved; Reed had no prior felonies; Reed's pre-trial drug screens were all negative; and all the witnesses who testified at the plea hearing on Reed's behalf indicated that he was a productive member of society. Finally, Reed claims the trial court utilized a mechanical sentencing scheme "that prevented proper consideration" of the request for a deviation.

We find no merit in these contentions. First, the record contains no evidence that the trial court declined to deviate "based on quantity alone." The record also fails to support Reed's mechanical sentencing claim. Such a claim requires "a clear statement in the record that constitutes either a general refusal to consider [a

5

deviation] or an erroneous expression of belief that the law does not permit the exercise of such discretion." (Citation and punctuation omitted.) *McCullough v. State*, 317 Ga. App. 853 (733 SE2d 36) (2012). Here, the trial court's statements during the sentencing hearing clearly indicate an awareness that it had the discretion to deviate from the mandatory minimum sentence; there is nothing in the trial court's statement that indicates it was applying a mechanical policy or "that there was an outright refusal to consider [Reed's request to deviate]." Id. at 855.

The remainder of Reed's arguments focus upon the statutory factors allowing a trial court discretion to deviate. OCGA § 16-13-31 (g) provides three ways that a trial court may impose a reduced or suspended sentence upon a defendant convicted of violating the Code section. Subsection (1) allows the trial court to depart from the mandatory minimum sentence if it determines that the defendant has provided "substantial assistance in the identification, arrest, or conviction of any of his or her accomplices, accessories, coconspirators, or principals." OCGA § 16-13-31 (g) (1). Subsection (3) allows for departure "when the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum." OCGA § 16-13-31 (3). Finally, subsection (2), which Reed contends applies in this case, provides:

*In the court's discretion*, the judge *may* depart from the mandatory minimum sentence specified for a person who is convicted of a violation of this Code section as set forth in subparagraph (B) of this paragraph *if the judge concludes* that: (i) The defendant was not a leader of the criminal conduct; (ii) The defendant did not possess or use a firearm, dangerous weapon, or hazardous object during the crime; (iii) The criminal conduct did not result in a death or serious bodily injury to a person other than to a person who is a party to the crime; (iv) The defendant has no prior felony conviction; and (v) The interests of justice will not be served by the imposition of the prescribed mandatory minimum sentence.

(Emphasis supplied.) OCGA § 16-13-31 (g) (2) (A).

This statute explicitly authorizes the trial court to exercise its *discretion* in departing from the mandatory minimum sentence only if all five factors are present. See *Lastohkein v. State*, 199 Ga. App. 555, 556 (2) (405 SE2d 554) (1991) ("[OCGA § 16-13-31 (g) (1)] does not by its terms require the judge to impose a reduced or suspended sentence in the event a defendant has rendered such assistance but instead merely authorizes him to do so."). Contrary to Reed's contention, the statute does not state that the trial court *must* depart from the mandatory minimum sentence in the event it finds the presence of all five factors. It also does not require consideration of aggravating evidence to support a decision *not* to depart from the mandatory

7

minimum sentence. The first four factors can be determined from objective evidence in the record, but the fifth is, by its very nature, subjective. "[A]pplication of [an interest of justice] standard to the peculiar circumstances of a particular case is a matter committed to the sound discretion of the trial court, and we review the trial court's decision for abuse of discretion." (Citations and punctuation omitted.) *Woodard Events v. Coffee House Indus*., __ Ga. App. __ (Case No. A17A0306, decided June 2, 2017).

In this case, the record from the plea hearing reflects that the trial court was well aware of its discretion to depart from the mandatory minimum sentence and the factors contained in OCGA § 16-13-31 (g)(2)(A). However, the trial court concluded that the fifth factor – the "interests of justice" – did not weigh in favor of Reed. As we cannot say that the trial court abused its discretion in reaching this conclusion, we affirm.[1]

*Judgment affirmed. Dillard, C. J., and Ray, P. J., concur*.

---

[1] Based upon our analysis of the interests of justice factor, we need not consider Reed's arguments as to the remaining four factors.