**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 11, 2021**

# In the Court of Appeals of Georgia

A20A1760. GAGE v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Cettina Gertrude Gage was convicted of trafficking in methamphetamine. Gage filed a motion for new trial, which the trial court denied. On appeal, Gage contends that her trial counsel rendered ineffective assistance by failing to interpose objections when (1) the State announced the terms of pretrial plea negotiations on the record and (2) the trial court failed to impose a reduced sentence pursuant to OCGA § 16-13-31 (g). For the reasons explained below, we affirm.

> [O]n appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. The jury's verdict will be upheld as

long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case.

(Punctuation and footnotes omitted.) *Neill v. State*, 247 Ga. App. 152, 152 (543 SE2d 436) (2000).

So viewed, the record shows that on the evening of June 30, 2017, an officer with the Cherokee County Sheriff's Department was on routine patrol when he observed a vehicle speeding on the roadway. The officer initiated a traffic stop, which was recorded by video taken by the patrol car's dash camera. There were four occupants in the vehicle, one of whom was Gage. Upon his initial approach, the officer detected the odor of burnt marijuana emanating from inside the vehicle. The officer requested and obtained the driver's consent to search the vehicle. All of the occupants exited the vehicle prior to the search, and the officer called for backup officers to assist with the investigation. During the vehicle search, the officer discovered two suspected Tramadol pills in the rear passenger side door. After the officer repeatedly questioned the occupants, Gage eventually stated that the pills were hers.

Gage was arrested for the drug possession offense. The officer performed a brief pat-down search of Gage's person incident to her arrest, but no weapons or

2

contraband were discovered at that time. Thereafter, Gage was transported to the Cherokee County jail. As a part of the jail's standard book-in procedure, a female deputy searched Gage again. During this second pat-down search, a small glass pipe typically used to smoke methamphetamine fell from Gage's pants and shattered on the floor. Then, a more detailed strip search of Gage was performed. During the strip search, two plastic baggies containing crystal-like substances suspected to be methamphetamine were recovered from Gage's person.

After the officer read Gage her *Miranda* rights,[1] Gage agreed to respond to the officer's questions regarding the methamphetamine. Gage's statements were recorded by audio. Gage told the officer that she had found the methamphetamine and pipe on the vehicle's floorboard and that she had used the pipe to smoke some of the drugs. Gage admitted possession of the methamphetamine. She further informed the officer that no one had demanded that she pick up the drugs and put them in her pants.

The suspected drug substances were submitted to the Georgia Bureau of Investigation's Crime Lab for testing. The test results confirmed that the substances were methamphetamine having a total weight of 52.938 grams.

---

[1] See *Miranda v. Arizona*, 384 U.S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Gage was charged with trafficking methamphetamine as proscribed by OCGA § 16-13-31 (e) and possession of Tramadol as proscribed by OCGA §§ 16-13-28 (a) (31.5) and 16-13-30 (a). At trial, Gage testified in her own defense, disclaiming any ownership interest in the drugs and the glass pipe that had been found in her possession. According to Gage, one of the vehicle's occupants had coerced her to claim and take possession of the drugs and the drug paraphernalia by threatening to kill her.

The jury found Gage guilty of the trafficking in methamphetamine charge, but not guilty of the possession of Tramadol charge.[2] Following the denial of her motion for new trial, Gage filed the instant appeal.

---

[2] We note that the evidence was sufficient to sustain Gage's conviction. See OCGA § 16-13-31 (e) (providing that any person who has possession of 28 grams or more of methamphetamine commits the felony offense of trafficking in methamphetamine); *Cook v. State*, 226 Ga. App. 113, 114-115 (1) (485 SE2d 595) (1997) (trafficking in methamphetamine conviction was authorized by evidence that a plastic bag filled with over 34 grams of methamphetamine was pulled from defendant's pants, notwithstanding defendant's contention that the drugs belonged to her companion).

Gage contends that she is entitled to relief from her conviction because her trial counsel provided ineffective assistance.

> To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). . . . We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them[.] . . . Further, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Biggins v. State*, 322 Ga. App. 286, 289 (3) (744 SE2d 811) (2013). Bearing these principles in mind, we turn to address Gage's claims.

1. Gage first contends that her trial counsel was ineffective when he failed to object to the State's announcement regarding pretrial plea offers. The record shows that prior to the commencement of the trial, and outside the presence of the jury, the prosecutor stated on the record the terms of two plea offers that the State had made to Gage, and Gage's trial counsel confirmed that Gage had rejected those offers. At

5

the motion for new trial hearing, trial counsel testified that he did not object to this practice because he felt that its purpose was to preclude any potential claim that the plea offers had not been conveyed. Gage nevertheless argues that the announcement was impermissible because the contents of plea negotiations are confidential and should not be disclosed to trial judges. We discern no error.

At the outset, we note that it is common practice in Georgia's state and federal proceedings to place plea offers on the record for purposes of confirming that the offers have been properly conveyed and understood by defendants. See, e.g., *Silvey v. State*, 335 Ga. App. 383, 393 (3) (a) (780 SE2d 708) (2015) (at a hearing, the trial court put on the record the State's offer to settle the criminal charges and informed defendant of his sentencing exposure); *State v. Lexie*, 331 Ga. App. 400, 401 (771 SE2d 97) (2015) (State announced plea offer at a hearing held by the trial court to put the plea offer on the record); *Biggins*, 322 Ga. App. at 289 (3) (a) (prosecutor discussed plea offer with the trial court on the record at the start of the trial, and the trial court confirmed that defendant understood the sentencing range and the plea offer); *Posley v. State*, 264 Ga. App. 869, 871 (1) (b) (592 SE2d 504) (2003) (prior to trial, defense counsel placed on the record his recitation of the State's plea offer and defendant's rejection of that offer, "to make sure the record was clear" that

6

defendant had made an informed choice to go to trial). See also, e. g., *Turner v. Philbin*, 2017 U.S. Dist. LEXIS 164639, at \*4 (N.D. Ga., Mar. 10, 2017) (on the day scheduled for trial, the State placed its plea offer on the record); *United States v. Stuckey*, 2015 U.S. Dist. LEXIS 195884, at \*2-3 (N.D. Ga., Dec. 2, 2015) (federal prosecutor stated plea offer on the record at a pretrial conference so that "the [c]ourt could be assured that [d]efendant had been advised of that offer[,]" and the court confirmed that defendant understood the plea offer) (punctuation omitted); *Yearby v. United States*, 2005 U.S. Dist. LEXIS 32720, at \*11-12 (M.D. Ga., June 10, 2005) (federal prosecutor put plea offer on the record at a pretrial conference held by the court, and the judge confirmed that defendant understood the plea offer); *Irick v. United States*, 2010 U.S. Dist. LEXIS 110895, at \*9-10, 14-15 (M.D. Ga., May 12, 2010) (federal prosecutor put plea offer on the record at the beginning of defendant's suppression hearing, and explained that she did so to confirm that defendant was aware of the plea offer and could not later claim that trial counsel did not convey it).

In support of her argument against this practice, Gage relies upon the provisions of OCGA § 24-4-408, which state as follows:

(a) Except as provided in Code Section 9-11-68 [governing the evaluation of offers of settlement for purposes of awarding attorney fees under the Civil Practice Act], evidence of:

(1) Furnishing, offering, or promising to furnish; or

(2) Accepting, offering, or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount shall not be admissible to prove liability for or invalidity of any claim or its amount.

(b) Evidence of conduct or statements made in compromise negotiations or mediation shall not be admissible.

(c) This Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation. This Code section shall not require exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness, negating a contention of undue delay or abuse of process, or proving an effort to obstruct a criminal investigation or prosecution.

This rule was enacted as part of our new Evidence Code, which became effective on January 1, 2013.[3] See Ga. L. 2011, p. 99, §2. In enacting the new rules

---

[3] Under Georgia's former Evidence Code, the corresponding rule barring the admissibility of settlement discussions did not apply to criminal cases. See *Moore v. State*, 230 Ga. 839, 839-840 (1) (199 SE2d 243) (1973) (decided under former Code

of evidence, the Georgia Legislature expressed a clear intent to "adopt[ ], in large measure, the Federal Rules of Evidence." Ga. L. 2011, p. 1, §1. Because our State's appellate courts have not previously decided this issue under our new Evidence Code, "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." (Citation and punctuation omitted.) *State v. Burns*, 306 Ga. 117, 125 (3) (829 SE2d 367) (2019); see also *Anderson v. State*, 307 Ga. 79, 84 (3) (b), n. 14 (834 SE2d 830) (2019) (when a statute of Georgia's new Evidence Code is materially identical to the Federal Rules of Evidence, we look to federal case law with respect to the interpretation and application of the rule, "even though [Georgia's new statute] is also materially identical to its predecessor under the old Evidence Code") (citations and punctuation omitted); *Bashir v. State*, 350 Ga. App. 852, 857 (3) (830 SE2d 353) (2019) (when a rule under Georgia's new Evidence Code materially mirrors its federal counterpart, "we must look to federal appellate precedent [until]

---

1933, § 38-408, which provided that "admissions or propositions made with a view to a compromise, are not proper evidence"); *Williams v. State*, 178 Ga. App. 216, 217 (1) (342 SE2d 703) (1986) (decided under former OCGA § 24-3-37, which provided that admissions made with a view towards compromise were not proper evidence). But this case was tried in January 2019 under our new Evidence Code.

9

a Georgia appellate court has decided the issue under the new Evidence Code")

(citation and punctuation omitted).[4]

The Eleventh Circuit has held that the federal counterpart, Rule 408, applies

to both civil and criminal cases. See *United States v. Arias*, 431 F3d 1327, 1336-1338

(II) (E) (11th Cir. 2005).[5] Accepting arguendo that OCGA § 24-4-408 applies in

[4] See *Flading v. State*, 327 Ga. App. 346, 349 (1), n.4 (759 SE2d 67) (2014) (noting that provisions of OCGA § 24-4-408 track Federal Rule of Evidence 408).

[5] *Arias* was decided prior to the 2006 amendment to Rule 408. Notably, OCGA § 24-4-408 is more consistent with that prior version of Rule 408 than the current version. Such prior version of Rule 408 provided in full:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

*Threatte v. Toyota Motor Corp.*, 2006 U.S. Dist. LEXIS 103012, at *44 n.19 (SD Ga., May 2, 2006); see *McAuliffe v. United States*, 514 Fed. Appx. 542, 549 (6th Cir. 2013) (setting out the former version of Rule 408, and noting that "[a] 2006 rule amendment . . . conclusively settled a circuit split in favor of applying Rule 408 in criminal cases"); see also *United States v. Davis*, 596 F3d 852, 860, n. 6 (D.C. Cir. 2010) (noting that the circuits had been split on whether the rule applied to both civil

criminal cases,[6] that Code section does not operate to preclude what is contested here – putting the terms of the rejected plea offers on the record, pretrial and outside the presence of the jury. As Gage's trial counsel explained at the new trial hearing, such announcement was made for the purpose of establishing that the plea offers had been conveyed and rejected. See generally OCGA § 24-4-408 (c) (providing a non-

and criminal proceedings, but that a 2006 amendment to Rule 408 made clear that the rule applied to both types of proceedings). Accord *Hill, Kertscher & Wharton, LLP v. Moody*, 308 Ga. 74, 78 (2), n.2 (839 SE2d 535) (2020) ("[W]hen the General Assembly comprehensively and exhaustively revised the discovery provisions of the Civil Practice Act in 1972, OCGA § 9-11-26 was virtually identical to the corresponding federal rule then in effect, so cases and commentary interpreting the language used in the 1970 version of the federal discovery rules are therefore persuasive authority in interpreting Georgia's discovery statutes.") (citation and punctuation omitted); *Bowden v. Med. Center*, 297 Ga. 285, 291 (2) (a), n.5 (773 SE2d 692) (2015) (explaining that those cases and commentary interpreting the language used in the 1970 version of the federal discovery rules were persuasive authority in interpreting the Georgia discovery statute at issue, because such Georgia statute was "virtually identical to the corresponding federal rule that was in effect in 1972").

[6] The State asserts that Gage's claim is more aptly governed by OCGA § 24-4-410 (4), which provides that "[a]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which does not result in a plea of guilty" shall not be admissible against a criminal defendant in any judicial proceeding. See generally *Esprit v. State*, 305 Ga. 429, 435 (2) (c) (826 SE2d 7) (2019) (citing OCGA § 24-4-410 of Georgia's new Evidence Code as "governing the admissibility of pleas, plea discussions, and related statements"). Gage makes no argument under OCGA § 24-4-410, however. We need not reach that issue.

11

exhaustive set of circumstances to which the Code section does not require exclusion).

Moreover, contrary to Gage's argument, the trial court did not impermissibly participate in plea discussions in violation of Uniform Superior Court Rule 33.5 (A) during the cited pretrial procedure. See *Giddens v. State*, 349 Ga. App. 392, 397-398 (2) (825 SE2d 824) (2019) (rejecting argument that the trial court impermissibly participated in the plea discussions by conducting pretrial in-chambers proceedings that placed on the record the State's plea offer, defendant's rejection of the offer, and the sentencing range for the charged offenses).

In sum, the act of placing the rejected plea offers on the record during the pretrial proceedings did not violate the cited evidentiary and procedural rules. "Failure to make a meritless objection cannot be evidence of ineffective assistance." (Footnote omitted.) *Posley*, 264 Ga. App. at 871 (1) (b). Consequently, Gage's ineffective assistance claim fails.

2. Gage further argues that trial counsel erred in failing to object when the trial court did not impose a reduced sentence pursuant to OCGA § 16-13-31 (g). Again, no basis for reversal has been shown.

Gage was sentenced to twenty years, to serve the mandatory minimum term of imprisonment of ten years, and a fine of $200,000.00 for the trafficking in methamphetamine offense. See OCGA § 16-13-31 (e) (1) (concerning the mandatory minimum sentencing range where defendant possessed at least 28, but less than 200 grams of methamphetamine).

> In the court's discretion, the judge may depart from the mandatory minimum sentence[7] specified for a person who is convicted of a violation of this Code section . . . if the judge concludes that:
>
> (i) The defendant was not a leader of the criminal conduct;
> (ii) The defendant did not possess or use a firearm, dangerous weapon, or hazardous object during the crime;
> (iii) The criminal conduct did not result in a death or serious bodily injury to a person other than to a person who is a party to the crime;
> (iv) The defendant has no prior felony conviction; and
> (v) The interests of justice will not be served by the imposition of the prescribed mandatory minimum sentence.

OCGA § 16-13-31 (g) (2) (A). Here, only the fifth factor was in dispute.

---

[7] The sentencing departure range for Gage's trafficking methamphetamine offense would have been "five to ten years imprisonment and a fine of not less than $100,000.00 nor more than $200,000.00[.]" OCGA § 16-13-31 (g) (2) (B) (iv).

Notably, however, OCGA § 16-13-31 (g)(2)(A) does not require the trial court to depart from the mandatory minimum sentence even if it finds the presence of all five factors. *Reed v. State*, 342 Ga. App. 466, 469 (804 SE2d 129) (2017). Indeed, we have recognized that a determination of the fifth factor is subjective. Id. "Application of an interest of justice standard to the peculiar circumstances of a particular case is a matter committed to the sound discretion of the trial court[.]" (Citation and punctuation omitted.) Id. at 469.

"In the absence of any affirmative showing to the contrary, the [trial] court is presumed to have exercised its discretion in imposing sentence." (Citation and punctuation omitted.) *Smith v. State*, 269 Ga. App. 506, 507 (2) (604 SE2d 587) (2004). Here, there has been no affirmative showing that the trial judge was unaware of his discretion to deviate from the sentencing range in accordance with OCGA § 16-13-31 (g). Indeed, the State argued that deviation from the mandatory minimum sentence was not warranted because Gage never accepted responsibility for her actions in possessing 52.938 grams of methamphetamine, which far exceeded the minimum statutory trafficking amount.[8] "[A] defendant's lack of remorse as reflected

_____

[8] In pronouncing the sentence, the trial judge explained that he had "heard [Gage's] story at the time of the trial. The jury did[,] too." Gage's claims of innocence were rejected, as reflected by the guilty verdict and sentence. Notably, the trial judge

14

by his failure to admit the crime of which he was convicted . . . is a permissible area of inquiry during sentencing." (Citation, punctuation, and footnotes omitted.) *McGuire v. State*, 243 Ga. App. 899, 902 (5) (534 SE2d 549) (2000).

Based on the circumstances of this case, Gage has not shown that she was entitled to a sentence that deviated from the mandatory minimum under OCGA § 16-13-31 (g) (2) (A). See, e.g., *Reed*, 342 Ga. App. at 469-470 (deviation from the mandatory minimum sentence is not required, but rather, is discretionary even when all five factors of OCGA § 16-13-31 (g) (2) (A) are present). And "in the absence of affirmative evidence showing that the trial court believed it had no discretion [in imposing the sentence], we discern no prejudice caused by trial counsel's conduct." *Turnbull v. State*, 317 Ga. App. 719, 728 (2) (d) (732 SE2d 786) (2012). See also *Miller v. State*, 351 Ga. App. 757, 770 (2) (b) (833 SE2d 142) (2019) (because there was no cognizable right to a different sentence, defendant failed to show either deficient performance by trial counsel or a reasonable probability that the outcome would have been different if the sentencing issue had been timely raised).

---

also rejected Gage's request for First Offender treatment by stating, "[I] don't see this is a good case for that."

Because Gage has shown no merit in her ineffectiveness claim, she has established no basis to disturb the trial court's denial of her motion for a new trial.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*